**Georgiy MINOSYAN; et al., Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–70774.
Agency Nos. A75–659–801, A75–659–802, A75–659–803, A75–659–804.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 2004.

Decided Oct. 20, 2004.

---

Gittel Gordon, Esq, Law Office of Gittel Gordon, Del Mar, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Linda S. Wendtland, Esq., Norah Ascoli Schwarz, Esq., DOJ—U.S. Department of Justice, Washington, DC, for Respondent.

Before HAWKINS, THOMAS, and BEA, Circuit Judges.

## MEMORANDUM *

Georgiy Minosyan and his family, natives and citizens of Georgia, petition for

* This disposition is not appropriate for publica-   tion and may not be cited to or by the courts

review of the order of the Board of Immigration Appeals (BIA) affirming without opinion an Immigration Judge's (IJ) decision denying asylum, withholding of removal to Russia, and relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252 (2000).

Because it was not supplanted by de novo findings and conclusions of the BIA, we review the IJ's order. *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1090 (9th Cir.2000). We review for substantial evidence both the IJ's adverse credibility determination, *see Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002), and factual findings, *see Hernandez–Montiel*, 225 F.3d at 1090–91. We grant the petition for review in part, and dismiss in part.

The parties are familiar with the facts; therefore, we will refer to the factual and procedural history only as necessary. The Minosyans claimed persecution in both Georgia and Russia based on ethnicity, nationality and political opinion. The IJ denied the Minosyans' applications for asylum, withholding of removal, and protection under the CAT, finding the Minosyans not credible.

## 1. Credibility

■ In her opinion, the IJ observed that a document submitted with their asylum application, the translation of the hospital report, contradicted Mr. Minosyan's testimony that he had been living in Russia at the time he had been beaten and hospitalized. Because of the inconsistency between the translation of the report and Minosyan's account, the IJ concluded "it is not clear to this Court at all that this respondent suffered any type of persecution."

Inconsistencies between a doctor's letter and testimony regarding the events giving rise to the medical treatment may support a negative credibility finding. *See Pal v. INS*, 204 F.3d 935, 938 (9th Cir.2000). However, the original doctor's report was never admitted into evidence,[1] and the Minosyans contend any inconsistencies were attributable to a faulty translation. Perceived inconsistencies resulting from faulty or unreliable translation are insufficient to support a negative credibility finding. *See He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir.2003).

We cannot reassess the validity of the proffered translation in this case because it was not properly certified and the original doctor's report was never admitted into evidence. Accordingly, the IJ erred in using the translated document as a basis for finding that the Minosyans' claims were not credible.

The IJ also cited Mr. Minosyan's inability to recall the name of the pro-Armenian newspaper for which he worked, as well as his failure to produce any copies of the paper or any articles he had written. The failure to remember the name of a former employer will not automatically support a finding that the petitioner is not credible, if it does not go to the heart of a petitioner's claim. *See Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir.2004).

■ Additionally, review of the testimony does not support the IJ's characterization of Mr. Minosyan's testimony. Although Mr. Minosyan could not initially remember the name of the newspaper, he was later able to recall the name, as was

---

of this circuit except as provided by Ninth Circuit Rule 36–3.

**1.** At the hearing, the government successfully objected to the translation of the doctor's report submitted by the Minosyans as improperly certified "and inherently ... unreliable."

his wife. The IJ's observation that it was "incredible that one could publish and distribute newspapers and not know the name of the newspaper," is flawed, because (1) it is understandable that one would not instantly remember the name of an underground paper ten years after the fact; and (2) the Minosyans ultimately *did* recall the name of the paper. In reaching her conclusion the IJ failed to consider the testimony in its entirety.

■ The IJ went on to find that Mr. Minosyan had not provided documentary proof of his journalistic activities. Although proof of corroborating evidence may be required when an applicant's credibility is questioned, the IJ may only look to "material, easily available corroborating evidence." *See Sidhu v. INS*, 220 F.3d 1085, 1092 (9th Cir.2000). It is unsurprising that Mr. Minosyan did not retain 10–year old copies of controversial articles attributable to him, and his failure to do so cannot support a negative credibility finding.

■ Finally, the IJ concluded the Minosyans were not credible because they could not satisfactorily explain stamps in their passports from Greece, although they claimed to have only left Russia once to come to the United States. The Minosyans testified that the travel agency which had provided them with the passports may have gotten the stamps to create the appearance of authenticity. In any event, this question cannot support the IJ's credibility finding, as it does not go to the "heart" of their persecution claims. *See Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir.2002).

■ Because the IJ's adverse credibility determination was not supported by "substantial evidence," the Minosyans' testimony must be deemed credible. *See Salaam v. INS*, 229 F.3d 1234, 1238–39 (9th Cir. 2000).

**2. Persecution**

■ To qualify for a discretionary grant of asylum, an applicant must show he was unable or unwilling to return to his country of origin because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir.2000). To qualify for withholding of removal, an applicant must show a clear probability of persecution on account of one of the enumerated bases. *Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001).

Georgiy Minosyan testified that in Russia he had been beaten by police and his nephew was murdered by Cossacks in Sochi, Russia, because the nephew was Armenian. In her testimony, Mrs. Minosyan described being visited by Cossacks who demanded money and told the Minosyans to leave the country.

The IJ acknowledged Minosyans' testimony that their nephew had been killed, but speculated that it was not attributable to the nephew's ethnicity. The IJ also opined that Georgiy Minosyan's inability to work in Moscow did not rise to the level of evidence of persecution in Russia. Instead, the IJ found that the Minosyans' difficulties in Moscow were attributable to their failure to acquire the necessary residence permit, or "propiska," to live and work in Moscow.[2]

---

2. The IJ also made a finding that the Minosyans had firmly resettled in Russia and were therefore ineligible for asylum. Although the government did not raise this issue on appeal,

asylum is generally unavailable to an alien who has "firmly resettled" in another country after leaving his or her homeland. *See* 8 U.S.C. § 1158(b)(2)(vi); 8 C.F.R.

Although the Minosyans' economic hardships may not by themselves constitute evidence of persecution, the same cannot be said of the violent acts testified to by the Minosyans. The IJ's speculation that Minosyan's nephew was not killed because he was Armenian is simply not supported by the record. "[C]onjecture and speculation can never replace substantial evidence." *Maini v. INS*, 212 F.3d 1167, 1175 (9th Cir.2000). The Minosyans testified that their nephew was killed because he was Armenian, and acts of violence against an applicant's family members or friends on a protected basis are evidence of a well-founded fear of persecution. *See Korablina v. INS*, 158 F.3d 1038, 1044–45 (9th Cir.1998) (Jewish citizen of the Ukraine demonstrated well-founded fear of persecution based on attacks by Ukrainian nationalists against herself, her friends and family).

### 3. Changed Country Conditions

■ The government contends that even if the Minosyans were subjected to persecution, any fear of persecution in the future is not well-founded because of changed country conditions. Where credible testimony establishes instances of past persecution, it is presumed that the petitioner possesses a well-founded fear of future persecution. *See Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir.2001). The government can rebut the presumption of a well-founded fear of future persecution by demonstrating by a preponderance of the evidence that conditions in the petitioners' home country have changed. *Id.*

The IJ concluded that the Minosyan's claims of pervasive persecution were refuted by the 1995 State Department Profile of Asylum Claims and Country Conditions for Georgia. According to the report, there was a period of anti-Armenian sentiment between 1990 and 1992, but after 1993 there was no evidence of governmental discrimination against the Armenian population. Although State Department reports are recognized as a valuable source of information on country conditions, *see Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir.1995), the IJ here clearly misused the reports to discredit the Minosyans' claim of past persecution in Georgia.

The IJ's amorphous citation to the State Department report does not serve to rebut the presumption of a future fear of persecution in this case, since "individualized analysis of how changed conditions will affect the specific petitioner's situation is required. Information about general changes in the country is not sufficient." *Borja v. INS*, 175 F.3d 732, 738 (9th Cir. 1999) (internal quotation marks omitted). Moreover, the State Department report on conditions in Georgia does not undermine the Minosyans' claims that they were persecuted in Russia. Accordingly, we find substantial evidence does not support the IJ's finding of changed country conditions.

### 4. Reasonable Relocation

■ The Minosyans contend the IJ erred in finding that notwithstanding any fear of persecution in Moscow, the Minosyans could safely relocate to another city in Russia, Rostov.

[I]n ethnic clashes ... persecution of a specific ethnic or national group may occur in only one part of the country. In such situations, a person will not be excluded from refugee status merely because he could have sought refuge in

---

§ 208.14(d)(2). However, while substantial evidence supports the IJ's determination that the Minosyans had firmly resettled in Russia, barring their asylum claim based on persecution in Georgia, this does not prevent the Minosyans from claiming persecution in Russia as an independent basis for asylum and withholding of removal.

another part of the same country, if under all the circumstances it would not have been reasonable to expect him to do so.

*Melkonian v. Ashcroft,* 320 F.3d 1061, 1069–70 (9th Cir.2003) (citation omitted). If the Minosyans' fear is well-founded, the government must show that they can reasonably relocate within the country by a preponderance of the evidence. *Id.* at 1070.

The *Melkonian* court pointed to a non-exhaustive list of factors to be considered in evaluating whether relocation is reasonable:

> [A]djudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties.

*Id.* (quoting 8 C.F.R. § 208.13(b)(3) (2001)); *see also Knezevic v. Ashcroft,* 367 F.3d 1206, 1214 (9th Cir.2004).

The IJ observed that because the Minosyans have Russian passports, residence permits for Rostov, and "absolutely no problems encountered in the city of Rostov,"[3] they can therefore expect "safe haven in Russia as Russian citizens." This finding is insufficient, as it does not affirmatively address conditions for Armenians in Rostov, does not constitute a preponderance of the evidence, and falls short of the evidentiary standard set out in *Melkonian.*

**5. Convention Against Torture**

█ Lastly, the Minosyans contend the IJ erred in denying their application for protection under the Convention Against Torture. The government argues the Minosyans did not exhaust their administrative remedies with regard to this issue. Contrary to the Minosyans' assertion that they did raise their CAT claim before the BIA, the issue does not appear either in their notice of appeal to the BIA or in their subsequent brief.

We decline to reach this issue, because this Court will not address a Torture Convention claim that was not first raised before the BIA. *See Khourassany v. INS,* 208 F.3d 1096, 1099–1100 (9th Cir.2000) (denying petition for review from denial of asylum, concluding petitioner should first raise CAT claim in motion to reopen).

Petition for review GRANTED in part; DISMISSED in part.

Respondent's Motion for Judicial Notice is DENIED.

Petitioner's Motion to Quash Government's Supplemental Brief is GRANTED in part and DENIED in part. All argument from the Government's Supplemental Brief is stricken.

Petitioner's Motion for Sanctions is DENIED.

---

**3.** A correct finding. But the IJ left out the Minosyans had never gone to Rostov. One might as well say they had no problems in Buenos Aires, where they also have not resided, but it wouldn't be any more relevant.