**Alan Borisovich DIAMBEKOV,**
**Petitioner,**

v.

**John ASHCROFT, Attorney**
**General, Respondent.**

No. 03–70155, A75–520–526.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 2004.

Decided Jan. 18, 2005.

Richard D. Fraade, Esq., Law Office of Richard D. Fraade, Beverly Hills, CA, for Petitioner.

Howard R. Davis, Esq., Van Nuys, CA, Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Joan E. Smiley, Esq., Alison R. Drucker, Esq., Carl H. McIntyre, Jr., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before REINHARDT, HALL, and WARDLAW, Circuit Judges.

HALL, Circuit Judge, dissenting.

## MEMORANDUM *

Alan Borisovich Diambekov, a native and citizen of Russia, appeals from a Board of Immigration Appeals ("BIA") decision affirming the decision of the Immigration Judge ("IJ"). The IJ denied Diambekov's applications for asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), and voluntary departure. Because the BIA limited its decision to the IJ's adverse credibility determination, we do not reach the other aspects of Diambekov's claim. *INS v. Ventura*, 537 U.S. 12, 15–16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

■ The IJ offered three reasons for his adverse credibility determination, none of which is supported by substantial evidence.[1] *See Salaam v. INS*, 229 F.3d 1234, 1237–38 (9th Cir.2000). The first was that although Diambekov "testified that the car in which he was a passenger was shot at and his friend's wife was killed," he "never mentioned [this] in his written application." This is simply not true. In his written application, Diambekov twice referred expressly to an assassination attempt. Furthermore, it is well settled that the fact that Diambekov de-

scribed the event in more detail during his hearing than in his application is not grounds for an adverse credibility determination.[2] *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir.2000); *Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir.1999); *Lopez–Reyes v. INS*, 79 F.3d 908, 911 (9th Cir.1996). Contrary to what the IJ found, there was not a "significant omission" in Diambekov's written applicaiton that could support an adverse credibility finding.

■ The second reason the IJ offered was the fact that Diambekov mentioned details in his asylum application that he did not mention in his testimony, specifically that "in his written application [Diambekov] states that someone tried to terminate him; that he was detained, interrogated, physically abused on a number of occasions; and his personal belongings were searched and his telephone was tapped. However, [Diambekov] failed to testify to any of these events at his hearing." Much of the IJ's statement is factually false. Diambekov did testify to the assassination attempt, his detention, his interrogation, and an attack so brutal that he lost consciousness. The fact that Diambekov, without being asked, did not volunteer statements regarding less serious aspects of his persecution does not render his testimony in general incredible.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The IJ also discussed the "context" for his determination, including explaining that "there is an obvious suggestion in this case that the respondent has come to Hollywood with aspirations of making it in the movies." However, our law is clear that an IJ is not allowed to base his adverse credibility determination on speculation about an alien's "real motives." *See, e.g., Paramasamy v. Ashcroft*, 295 F.3d 1047, 1052 (9th Cir.2002).

2. The dissent takes issue with the fact that, despite not having been asked about the point, Diambekov did not specifically mention that the assassination attempt occurred "during training," although he did mention that the attempt occurred during the period when he was teaching and training actors to do a stunt scene in Moscow. Furthermore, even if Diambekov's failure to elaborate without further prompting could be characterized as an "inconsistency," it is a minor one that does not go to the heart of his claim.

Furthermore, neither the IJ nor counsel for the INS asked Diambekov about any portion of his written application, much less the portions that the IJ, a year later, decided undermined Diambekov's credibility. Because we require that asylum applicants be given a chance to explain any perceived discrepancies before they are held against them, see *Akinmade,* 196 F.3d at 957, the "inconsistencies," had they existed, could not have constituted substantial evidence upon which the IJ could have based a credibility determination.

The final reason that the IJ offered was that Diambekov's story was "implausible," noting, in part through seven rhetorical questions, how he thought the KGB could have persecuted him even more harshly. This speculation about how the KGB operates when persecuting a man who refuses to spy on the organization's behalf is the kind of conjecture this court routinely rejects. *See, e.g., Ge v. Ashcroft,* 367 F.3d 1121, 1125–26 (9th Cir.2004); *Gui v. INS,* 280 F.3d 1217, 1226–27 (9th Cir.2002); *Lopez–Reyes v. INS,* 79 F.3d 908, 912 (9th Cir.1996). Therefore, the IJ's final reason likewise does not support his adverse credibility finding.

For the foregoing reasons, we grant the petition, reverse the BIA's adverse credibility determination, and remand to the BIA. Furthermore, while Diambekov failed to raise the issue of voluntary departure in his brief, because the IJ's denial of this alternative relief may have been based in part on his adverse credibility determination, we encourage the BIA to revisit that decision as well.

PETITION GRANTED; MATTER REMANDED.

HALL, Circuit Judge.

I respectfully dissent.

The record does not compel the conclusion that Diambekov is credible. *INS v. Elias Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The immigration judge ("IJ") cited several material omissions in Diambekov's testimony and several inconsistencies between his testimony and his application for asylum. Diambekov testified that his friend's wife was killed when an unknown assailant shot into their car. His asylum application contains two references to an attempted assassination. First, Diambekov stated that "[t]hey ... tried to assassinate me." In a separate section, he stated that "[o]ne day during training somebody tried to terminate me." The IJ concluded that neither of these statements referred to the incident in the car. This conclusion was based on an implicit assumption that Diambekov's statement that "[t]hey ... tried to assassinate me" referred to the assassination attempt "during training," which was the only other incident mentioned in his asylum application. Regardless of which incident "[t]hey ... tried to assassinate me" refers to, there are relevant inconsistencies between Diambekov's asylum application and his testimony because he did not testify to any assassination attempt that occurred "during training." Diambekov's omission was not minor because an assassination attempt would go to the heart of Diambekov's fear of future persecution. *See Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990) (reversing IJ's adverse credibility finding because it was based on the omission of two "collateral" events).

Diambekov's application for asylum also indicated that he had been "detained and interrogated in Moscow on different occasions." In his testimony he only indicated one such incident: he and the other occupants of his car were detained by the police after his friend's wife was killed. His application for asylum indicated that he had been "physically abused" "a num-

ber of times." However, he testified to only one incident of physical abuse. These discrepancies were probably not caused by illiteracy or poor English language skills. *Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990) ("Forms are frequently filled out by poor, illiterate people who do not speak English and are unable to retain counsel. Under these circumstances, the IJs cannot expect the answers provided in the applications to be as comprehensive or as thorough as they would be if set forth in a legal brief."). As the IJ recognized, Diambekov is well educated:

> [R]espondent is an intelligent and educated man who, according to his own testimony, was specifically selected to serve in a special military division under the former Soviet KGB. Thus, in adjudicating the significance of the inconsistencies or other problems in the respondent's testimony under the Ninth Circuit precedent, it must be considered that the respondent is a sophisticated, intelligent, highly trained individual. He has to be held responsible for what he says.

Like the majority, I too am somewhat troubled that Diambekov was not questioned directly about these inconsistencies. However, I do not think this is sufficient to find that the record compels reversal because the inconsistencies are central to Diambekov's claim and obvious from the face of the record.

I would affirm because the record does not compel a finding that Diambekov was credible, and Diambekov did not submit easily obtainable documentary evidence to establish that he had a well-founded fear of persecution.