**Maureen Lata NARAYAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–74502.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2006.

Filed Feb. 16, 2007.

** The Honorable Donald W. Molloy, Chief United States District Judge for the District of Montana, sitting by designation.

Joseph J. Siguenza, Esq., George T. Heridis, Esq., Law Offices of Ashwani K. Bhakhri, a Professional Corporation, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, David V. Bernal, Attorney, Anthony P. Nicastro, Esq., DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: KLEINFELD and THOMAS, Circuit Judges, and LEIGHTON *, District Judge.

### MEMORANDUM **

Maureen Lata Narayan petitions this court for review of a decision by the Board of Immigration Appeals affirming the Immigration Judge's order of removal and denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture. We deny her petition.

We review a BIA decision to determine if it is supported by substantial evidence, and reverse if the evidence compels a contrary conclusion.[1] Because the BIA adopted the IJ's adverse credibility findings, the IJ's findings are reviewed under the same standard.[2] All we require is that "an IJ ... point to a 'specific and cogent' reason supporting an adverse credibility finding" and that reason identified " 'be substantial and bear a legitimate nexus to the finding.' "[3][4]

Substantial evidence supported the adverse credibility finding. That Ms. Naray-

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. See, e.g., INS v. Elias–Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

2. Kaur v. Ashcroft, 379 F.3d 876, 884 (9th Cir.2004).

3. Id. (quoting Alvarez–Santos v. INS, 332 F.3d 1245, 1254 (9th Cir.2003); Salaam v. INS, 229 F.3d 1234, 1238 (9th Cir.2000)).

4. The REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231 (2005), amended the law regarding both what an IJ can consider in making a credibility determination and when an IJ can require corroborative evidence. However, that provision of the REAL ID Act, sec. 101(a)(3), applies only to "applications for asylum, withholding, or other relief from removal made on or after [the date of enactment, May 11, 2005]." Because Ms. Narayan's application was made in 1999, the relevant provisions of the REAL ID Act does not govern her case.

an sent her daughters back to Fiji despite her claim of rape there undermined the credibility of her claim that she had in fact been raped. Ms. Narayan said she sent her daughters back because "they had fallen so sick." But her descriptions of their "sickness" were vague and inconsistent. She first testified that "they had stomach upset [sic]," "would fever continuously," "were not able to eat, and would vomit." Later, she testified that "[t]hey had become so severely sick that they were unable to walk without support." But, when counsel pressed the issue, she admitted that the children "could walk." Ms. Narayan also admitted that, despite her children being so sick, she never attempted to bring them to a doctor, hospital, or free clinic. Her implausible and inconsistent testimony about why she sent her daughters back undermined its credibility.

The failure of Ms. Narayan's to obtain corroboration from her sister-in-law was significant. Her sister-in-law, Ms. Narayan testified, escorted the daughters back to Fiji. The sister-in-law would have been able to testify as to their condition at the time. She was a U.S. resident, though she was abroad on vacation at the time of the hearing. "[W]here the IJ has reason to question the applicant's credibility, and the applicant fails to produce non-duplicative, material, and easily available corroborating evidence and provides no credible explanation for such failure, an adverse credibility finding will withstand appellate review."[5]

Substantial evidence supported the IJ's finding that Ms. Narayan's assertions about her daughters' illness and their return to Fiji were not credible, so we lack authority to supplement it. These assertions went to the heart of her asylum claim. If Narayan was lying about the rape, then the basis for the asylum claim

did not exist, and the lack of credibility of her testimony about her daughters bore on whether the rape testimony was true. The change in political circumstances would not necessarily induce a mother to send her daughters back to so horrific a social context. And the sister-in-law would have had personal knowledge of the daughter's health on the long trip, and of what petitioner had told her about why she was sending her daughters back.

**PETITION DENIED.**

THOMAS, Circuit Judge, dissenting.

Because the record does not support the reasons offered by the BIA and the IJ for their adverse credibility finding, I respectfully dissent.

The reasons offered by the agency and relied on by the majority to discredit Ms. Narayan do not go to the heart of her asylum claim, and cannot therefore form the basis of a denial based on an adverse credibility determination. *Kaur v. Ashcroft*, 379 F.3d 876, 888 (9th Cir.2004).

The majority's entire opinion is based on events that allegedly occurred in California in 2000. Ms. Narayan's application for asylum, however, is based on allegations of past persecution in Fiji in 1999. Nevertheless, the majority concludes that the events in 2000 "went to the heart of her asylum claim" because any perceived inconsistency regarding Ms. Narayan's daughters' symptoms suggests she was lying about being raped. Our case law instructs otherwise. In *Kaur*, the applicant alleged being imprisoned, beaten and raped in India in 1995. 379 F.3d at 878. The IJ rejected her claim, finding her not credible in part because the IJ found her testimony regarding a critical event in 1993 to be vague and ambiguous. We

**5.** *Sidhu v. INS,* 220 F.3d 1085, 1092 (9th    Cir.2000).

rejected the IJ's conclusion, holding that the 1993 incident did not go to the heart of the 1995 claim, even though the 1993 incident allegedly provided the motive for the later persecution and was thus critical to the applicant's overall story. *Id.* at 888. The situation here is no different.

Even were the circumstances surrounding Ms. Narayan's daughters' return as central as the majority claims, Ms. Narayan's story was neither vague nor inconsistent. Ms. Narayan explained that her children were severely sick from the trauma of what had happened and that they had multiple symptoms. She suggested that at one point they could not walk without support. These children were five and six years old. If they were vomiting, unable to eat, suffering from stomach pains, and had continuous fevers, that they should be so weak or disoriented that they had trouble walking without support is hardly implausible. That they at some later point were able to walk is equally plausible. None of these facts are inconsistent with any other. The majority also faults Ms. Narayan for not taking her children to see a doctor, but, as she explained, her relatives here on whom she relied for navigating our not-uncomplex society told her she would not be able to afford American medical care (something that is, sadly, not implausible).

The majority and the agency also fault Ms. Narayan's decision to return her daughters to Fiji. However, this decision is easily explained from the record. When Ms. Narayan sent her daughters back to Fiji, the Indo–Fijian–led Labor Party had been in power for nearly a year and conditions in Fiji were favorable to Indo–Fijians. The coup d'etat that would return Fiji to the conditions Ms. Narayan fled and that she still fears did not take place until May of 2000. Given these facts, her decision to send her children back to Fiji when

she did, given their condition and her belief that American medical care was out of her reach, was entirely understandable.

Finally, the majority faults Ms. Narayan for failing to produce her sister-in-law to corroborate her story. This failure cannot be dispositive of an adverse credibility finding because the only non-duplicative evidence the witness would have been able to testify to was not material to Ms. Narayan's claim. Ms. Narayan's sister-in-law was not in Fiji during the events underlying Ms. Narayan's persecution claim and thus can only testify as to what Ms. Narayan told her about them. Such duplicative evidence is not a valid ground on which to demand corroboration. *See Sidhu v. INS,* 220 F.3d 1085 (9th Cir.2000); *Mejia–Paiz v. INS,* 111 F.3d 720, 724 (9th Cir.1997)

Finally, I note that the two attorneys who represented Narayan have since been disbarred. Nonetheless, she still presented clear and consistent testimony answering everything asked of her. She credibly testified that in retaliation for her husband's support of the Labor Party, members of the Fijian army beat him, raped her, burned his taxi and their house, threatened the lives of their entire family, and told them to leave Fiji because Fiji "is only for Fijians and Indians have no right to stay in Fiji." During the final confrontation in which the army members burned her house, she fled with the children, but her husband was taken by the soldiers.

In my view, the record compels the conclusion that she has suffered past persecution, testified credibly, and is entitled to asylum. For those reasons, I respectfully dissent.