**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAUL GREGORIO MARTINEZ,
                          *Petitioner,*

          v.

MICHAEL B. MUKASEY, Attorney
General,

                          *Respondent.*

No. 04-72975

Agency No.
A70-217-803

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 7, 2007—Pasadena, California

Filed October 6, 2008

Before: Harry Pregerson, John T. Noonan, and
Stephen S. Trott, Circuit Judges.

Opinion by Judge Trott;
Concurrence by Judge Noonan;
Dissent by Judge Pregerson

14193

**COUNSEL**

Kari E. Hong, Law Offices of Helen A. Sklar, Los Angeles, California, for the petitioner.

Arthur L. Rabin, U.S. Department of Justice, Office of Immigration Litigation, Washington D.C., for the respondent.

**OPINION**

TROTT, Circuit Judge:

Saul Martinez, a native of Guatemala, petitions for review of a Board of Immigration Appeals' ("BIA") decision on remand that denied his claims for asylum, withholding of removal, and voluntary departure. In its decision, the BIA upheld the Immigration Judge's ("IJ") adverse credibility finding regarding Martinez. In a 2003 decision, this court

remanded the matter to the BIA for further proceedings, concluding that it had failed to provide cogent reasons for rejecting Martinez's testimony in support of his application. *Martinez v. INS,* 72 F. App'x 564 (9th Cir. 2003). Martinez also petitions for review of the BIA's decision that denied his motion to reopen to consider his Convention Against Torture claim.

We have jurisdiction over this timely petition, which we deny on both counts.

# I

The facts pertaining to Martinez's credibility — or the lack thereof — are striking. In his initial Request for Asylum in the United States dated September 21, 1992, he made the following admittedly false representations under penalty of perjury, declaring that "the above and all accompanying documents are true and correct to the best of my knowledge and belief":

> I am seeking Asylum in the US. Because in Guatemala I was threatened by the Gobernment because I was in the University of San Carlos I was Leader of the Students in the University of San Carlos and for this reason the Gobernment persecuted and threatened me, I am afraid to return Guatemala because many of my companions to disappear completely and I can to disappear likewise. I was constantly threatened by the Gobernment and my life was in more danger than the rest of the people of my country. If I didn't leave, I would have been killed.

> The constant conflicts that exist in Guatemala no security for anyone. In my case that I belonged to student groups is very hard to live in Guatemala.

> . . . .

> I was in Student Group of The University of San Carlos during the period between 1986 to Nov. 1991. I was active member. My duties were to organized Political Meeting. And organized to the Students.
>
> . . . .
>
> I was threatened by the Gobernment they have gone on various occasions to my house and the University looking for me. because I was Leader of the Students in the University of San Carlos, causing my life to be threatened to death by the Gobernment.
>
> . . . .
>
> I came to the US. in search of protection of my life, I also came in search of a peaceful life without always having to fear for my life, because in Guatemala my life was in danger, I was always persecuted by the Gobernment.

The next step in what turns out to have been a plot to deceive the Immigration and Naturalization Service, the United States Department of Justice, and the Attorney General was to foil the asylum officer assigned to his case. To accomplish this ruse, he appeared in person before the officer three years after his application and testified under oath — again falsely — that he was the victim of persecution "on account of my political opinion." Moreover, he swore before the officer that the content of his initial request was true. The officer's Assessment Report dated November 14, 1995, demonstrates that his hoax was designed to fit neatly into the requirements of our asylum law. The report reads as follows:

> Applicant indicated that he is a 31-year-old male native and citizen of Guatemala who entered the United States on May 14, 1992 at San Ysidro, Ca without inspection.

Applicant fears that he will be killed by the government on account of his *political opinion*.

*Applicant credibly testified* that in January 1991, he became a leader in a student club at San Carlos University. Applicant stated that he began having problems due to his political opinion after participating in Mardi Gras type parades with political overtones. Applicant began receiving threatening phone calls in January 1991 and believed that agents of the government were responsible. Applicant did not stated [sic] a political opinion in response to the phone calls. Applicant stated that the calls persisted through June 1991, when Applicant went to visit his parents in Puerto Barrios. Applicant did not expereince [sic] any problems in Puerto Barrios and stated that it was a remote little town far from Guatemala City. In August 1991, Applicant was chased by a car. Applicant was not harmed, although he believed that the government was responsible. In November 1991, Applicant was again chased by a car and shot at. Applicant was not harmed and believed that the government was trying to scare him. Applicant left Guatemala the next day and traveled through Mexico prior to coming to the United States. Applicant further stated that he has a brother, who is currently living in Guatemala City and not experiencing any problems with the Government. Applicant's family is presently living in Puerto Barrios, and not experiencing problems with the government.

Applicant has been threatened on several occasions on account of his political opinion. Threats alone do not constitute persecution. The Applicant has not established a well-founded fear of future persecution. It appears that the threats the Applicant suffered were local in nature. The Applicant was able to live in Puerto Barrios, and not experience problems with

the government. Applicant's parents are presently living in Puerto Barrios and not experiencing problems. Applicant has not established that the government has the inclination to pursue him. Applicant can relocate.

For the foregoing reasons, Applicant is not eliglible [sic] for asylum in the United States. Assessment is to refer to the Immigration Judge.

(emphasis added).

Three aspects of this report are particularly noteworthy. First, the level of invented detail with which Martinez presented his false claim. Second, his ability to convince an experienced asylum officer that his swindle was credible; and third, Martinez's failure nonetheless to achieve a favorable asylum eligibility recommendation.

Having failed to convince the asylum officer that his phony political persecution story made him eligible for asylum, Martinez simply changed his tune, shed his first yarn, and showed up three months later for a hearing before an IJ, armed with an entirely new ground designed to make him eligible for asylum. No longer had he been a victim of persecution on account of his political opinion. Now, euphemistically calling his bogus initial request "partially incorrect," he averred that he had been persecuted because of his homosexuality.

When confronted at his hearing with his previous story, Martinez conceded that both the elaborate tale he recounted in his initial request and then repeated in person three years later to the asylum officer was a fabrication. He allowed that he had taken an oath to tell the truth to the officer, but that he had lied anyway because his "life was in danger." When pressed, Martinez admitted that the asylum officer had not been intimidating and that he had never had any problem dur-

ing the four years he had been in the United States with government officials because of his homosexuality.

The context of Martinez's lies under oath to the asylum officer was the subject of direct testimony by the officer, none of which supports the existence of a hostile interview atmosphere which would explain Martinez's adherence to his lies or his alleged fear of danger. The officer's testimony amply supports the IJ's disbelief of Martinez's explanation of his lies. Stating that he specifically recalled Martinez's interview, the officer said:

> I, I do swear them in also. I think I stated that also, you know, as I was sworn today stating that he should tell the truth and such. We — I personally explain the procedure trying to make him feel as comfortable as possible letting them know what the next step is in the procedure even prior to getting to the interview. After explaining the procedure we go ahead and verify the biographical data on the I-589, okay, and ask for any other evidence that he may be willing to provide at that time. *We assure that the interview is very confidential, that nothing will get back to Guatemala. That's part of the procedure and basically trying to reassure the applicant we're there to help them if we can.* So they tell, tell us their complete story and we go, we go ahead over all the biographical information and also the, the testimony on the I-589. And we, we start — usually I start by asking him the application to tell me the most severe incidents that he experienced in Guatemala that compelled him to come to the United States. I make it clear that there are five grounds so there is not just, not just one ground that there — I also let them know that there is membership in political social — political group which is more or less a — membership in a, in a social group, excuse me. Not necessarily in a political group. I do ask whether he's, he's

been a member of any groups or organizations, political or otherwise, other than the Catholic church per se. I, I do make it clear that there are five grounds. And we, we get into eliciting information, ascertaining that information for credibility, that's the majority of the interview. Okay. We stress credibility very highly and then upon completion of the interview I, I bring any changes that were made during the interview on the 589 or in testimony, anything that is inconsistent with what, what was explained originally. That is addressed. Upon addressing any inconsistencies we have the applicant sign stating that all the testimony that he has provided on the 589 and also his verbal testimony is true and correct.

(emphasis added).

In a thorough and detailed twenty-three page decision, the IJ arrayed every aspect of the case and evidence before him and then turned to Martinez's credibility. Noting that the burden to demonstrate eligibility rested with the petitioner, the IJ made the following lack of credibility finding:

The Respondent has presented insufficient specific facts as well as concrete and/or credible evidence for the Court to infer that he has been persecuted or has a well-founded fear of persecution in Guatemala on account of his race, his religion, his nationality, his membership in a particular social group or his political opinion. The basis of the Respondent's claim to asylum before this Court was dramatically inconsistent with the claim presented to the INS in 1992 and reaffirmed before an INS asylum officer on November 13, 1995. Although Respondent provides an explanation for the different claims I do not find that explanation to be credible. In light of the Respondent's intelligence and more than three years time in the Los Angeles area during

which time he appears to have freely associated with other gays and to have had no untoward difficulties with governmental authorities Respondent did not acquire the articulate intelligent relaxed demeanor which he exhibited in this Court overnight. Moreover, we have a situation where the Respondent did worse than neglect for whatever reason to refer to his "homosexual" claim in 1992 or 1995, he set forth "student/political" claim which was completely untrue and he knew it was untrue. The Respondent's prior experience does not entitle him to come to the United States and lie to a governmental official to secure benefits under the laws of this country. Based upon this conduct I find that Respondent's present claim of mistreatment due to his homosexuality lacks credibility and, indeed, that Respondent is not a person of good moral character as that term is defined at Section 101(f)(6) of the Act.

. . . .

The Respondent has applied for the privilege of voluntary departure pursuant to Section 244(e) of the Act as it existed prior to April 1, 1997. That section requires an alien to establish that he is a person of good moral character at least five years immediately preceding his application. Good moral character as a defined term in Section 101(f)(6) of the Act bars the finding of good moral character if the alien has given false testimony for the purpose of obtaining any benefit under the Act. In this case, Respondent is unable to establish statutory eligibility as he gave false testimony before an INS asylum officer on November 13, 1995 for the purpose of obtaining asylum in the United States pursuant to Section 208 of the Act. Accordingly, Respondent's application for voluntary departure is denied on statutory grounds.

Specifically referencing that part of the IJ's opinion dealing with Martinez's lack of credibility, the BIA determined in its first Order denying asylum that Martinez had not presented a credible testimonial claim sufficient to satisfy his burden of proof. Addressing Martinez's attempted explanation for the difference between his two stories, the BIA said, "We are not persuaded by the respondent's explanations for this discrepancy." Martinez petitioned for review of that decision.

In an unpublished memorandum decision, we said, "Because the BIA stated only that it was 'not persuaded by respondent's explanations' and provided no legitimate, let alone cogent, reason for rejecting Martinez's 'wholly consistent' misrepresentation, we remand for proceedings consistent with this disposition." *Martinez v. INS,* 72 F. App'x 564. We opined also that the BIA "did not adopt the IJ's" credibility decision. *Id.* On remand, the BIA corrected our misimpression, telling us that they *had* adopted the IJ's reasoned adverse credibility finding the first time around. The Board then included in a new Order what our first panel majority said was lacking in the BIA's original decision: a specific, cogent reason for rejecting Martinez's justification for misrepresenting the basis for his fear of returning to Guatemala. In addition, the Board formally affirmed its adoption in its first Order of the IJ's adverse credibility finding:

> On July 25, 2003, the Ninth Circuit remanded the instant proceeding to the Board after finding that the Board *failed to provide a specific, cogent reason* for rejecting the respondent's justification for misrepresenting the basis of his fear. Through his appeal, the respondent incorporates a motion to remand to pursue relief under the Convention Against Torture ("CAT"). The respondent's appeal is dismissed. The respondent's motion is denied.
>
> Upon review, we affirm our prior resolution of the instant case. Specifically, we find that the respondent

failed to sustain his burden of proof regarding asy-
lum *as the result of his lack of credibility*. The record
reflects that the respondent *twice misrepresented the
basis of his fear while testifying under oath* (Exhs. 2
and 12). Specifically, we note that the respondent
initially claimed that he had been persecuted on
account of his political opinion, however, he subse-
quently retracted this claim and instead, asserted that
he suffered persecution on account of his sexual ori-
entation. *We find this discrepancy material as it goes
to the heart of the respondent's asylum claim.*

Although the respondent explained that the afore-
mentioned misrepresentation was due to his fear of
experiencing additional persecution if the United
States government learned of his sexual orientation,
we do not find his justification persuasive. As
observed by the Immigration Judge, the respondent
spent more than 3 years in the Los Angeles area
freely associating with other gays and furthermore,
he did not experience any problems with any United
States governmental authorities (I.J. at 17). As fur-
ther noted by the Immigration Judge, the respondent
exhibited an "articulate, intelligent and relaxed
demeanor." *Id.* In sum, *we adopted the Immigration
Judge's decision below* as the Immigration Judge
articulated cogent reasons for his adverse credibility
finding.

(emphasis added).

## II

**[1]** Before deciding whether the IJ's adverse credibility
finding, adopted and elaborated by the BIA, was justified or
not, we must address a preliminary question: does our first
panel's decision constitute the "law of the case" which we

must continue to apply as the matter comes to us for a second time? If so, we would be required to grant Martinez's petition.

**[2]** We answer this question in the negative. As Judge Noonan correctly explains in his concurring opinion, and as we have previously held, the law of the case doctrine is "not an absolute bar to reconsideration of matters previously decided." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995). It "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). Although this important doctrine is not something we take lightly, if the previous disposition was "clearly erroneous and would work a manifest injustice," we may reconsider previously decided questions. *Leslie Salt*, 55 F.3d at 1393.

**[3]** Here, as the record indicates, our court's previous decision was materially mistaken, primarily because it was based on a misunderstanding of the BIA's decision, i.e., that the BIA had not adopted the IJ's adverse credibility finding — we now know that it had.

**[4]** Second, I agree with Judge Noonan that to allow Martinez at the end of the day to benefit from our mistake and his deliberate attempt to deceive with invented facts our process and the rule of law would constitute a manifest injustice. Accordingly, we proceed to the next issue: whether the BIA's final decision passes muster, or not.

## III

**[5]** As the record reveals, Martinez repeatedly and persistently lied under oath with respect to his application for asylum. That his skillful lies were material and went to the heart of his presentation goes without saying. The IJ's reasons for his adverse credibility finding "bear a legitimate nexus" to his decision. *Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir. 2000); and we can discern no flaw in either the IJ's or the BIA's rea-

soning. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). Thus, both the IJ and the BIA's adopted adverse credibility findings are well supported by substantial uncontroverted evidence in the record. *Al-Harbi v. INS*, 242 F.3d 882, 889-90 (9th Cir. 2001) (affirming negative credibility finding supported by applicant's "propensity to change his story regarding incidents of past persecution"). Accordingly, we deny Martinez's petition for review.[1]

Petition **DENIED**.

---

NOONAN, Circuit Judge, concurring:

This case turns on what is the law of the case. The doctrine that requires a court to follow, save with rare exceptions, what has previously been decided by the court obviously plays an important part in the judicial process. We are not to be put in the place of Penelope constantly unweaving and reweaving our decisions.

Judge Trott makes a compelling case that our initial decision was mistaken. Martinez had lied grossly and repeatedly in his sworn asylum application and in his testimony three years later before the asylum officer. His explanation for what is politely called "discrepancies" is as unconvincing to me as it was to the immigration judge who heard him in person. Martinez is articulate and intelligent and made articulate and intelligent misrepresentations under oath going to the heart of his asylum claim.

Does recognition of our original mistake call for abandonment of the law of the case? No new law has intervened. No

---

[1]We conclude that the BIA did not abuse its discretion in concluding that Martinez failed to establish a prima facie case that warrants reopening under the Convention Against Torture.

new evidence has been presented. Yet the law of the case is not inexorable. It "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v.* Anderson, 225 U.S. 436, 444 (1912); *see also Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (explaining circumstances in which court will not apply law of the case doctrine). To let a brazen liar game the system and receive the great benefit of a grant of asylum is an injustice. It is not the way the law was meant to work. The injustice is "manifest" once the facts of the case are set out. For this reason, I concur in Judge Trott's opinion.

PREGERSON, Circuit Judge, Dissenting:

We have already decided the issue in this case, which is whether the false statements in Martinez's initial asylum application and interview provided a sufficient basis to deny his asylum claim. My colleagues have decided to disregard the law of the case because they believe our previous disposition was "clearly erroneous and would work a manifest injustice." Because our previous disposition was neither clearly erroneous nor would it work a manifest injustice, I dissent.

The majority argues that our previous disposition was clearly erroneous because it misunderstood whether the BIA had adopted the IJ's decision. Our previous disposition noted that:

> *As both parties conceded*, the BIA undertook an independent analysis of Martinez's testimony and "agreed with," *but did not adopt*, the IJ's decision that Martinez's description of past persecution was not credible. *See Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000) ("Where the BIA reviews the IJ's decision de novo, our review is limited to the

> BIA's decision, except to the extent the IJ's opinion
> is expressly adopted.").

*Martinez v. INS*, 72 F.App'x 564 (9th Cir. 2003) (emphasis added).

The majority contends that we erred in concluding that the BIA did not adopt the IJ's decision—despite the fact that the government had conceded that very point, as noted in the above quote. The majority relies on the BIA's later 2004 decision, which stated that the BIA *had* adopted the IJ's decision back in 2002. The BIA cannot avoid the court's disposition by retroactively recharacterizing its previous decision. The fact is that the BIA's 2002 decision did not adopt the IJ's decision. Nothing the BIA said in 2004 can change that fact. Our court was clearly correct that the BIA's 2002 decision did not adopt the IJ's decision. I fail to see how that could be clear error justifying discarding the law of the case.

The majority also contends that upholding this court's previous disposition would work a manifest injustice. I strongly disagree. It was clearly wrong for Martinez to initially present a false story about his persecution to immigration authorities. It is not hard to imagine, however, that a gay man who has suffered persecution on account of his sexual orientation would hide that fact from government authorities. When Martinez filed his asylum application in 1992, the INS had not yet recognized that persecution on account of sexual orientation provided a valid basis for an asylum claim. *See Karouni v. Gonzales*, 399 F.3d 1163, 1171 (9th Cir. 2005). Indeed, before the Immigration Act of 1990, homosexuality was a ground for exclusion for any immigrant seeking to enter this county. *See* Pub. Law 101-649 § 601, 104 Stat. 4978, 5067 (1990); *see also* House Rep. No. 723(I), 101st Cong., 2d Sess., p. 56, reprinted in 1990 U.S. Code Cong. & Ad. News 6710, 6736. In this context, it is easy to understand how Martinez might have felt compelled to invent a story to avoid

being returned to Guatemala, where he was persecuted on account of his sexual orientation.

As such, I am unable to understand how granting Martinez's petition would constitute manifest injustice. I therefore dissent.