# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAJINDER SINGH,

                *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

                *Respondent.*

No. 03-71255

Agency No.
A76-846-897

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 14, 2006—San Francisco, California

Filed March 10, 2006

Before: Arthur L. Alarcón and M. Margaret McKeown,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge Alarcón

---

*The Honorable H. Russel Holland, United States District Judge for the
District of Alaska, sitting by designation.

**COUNSEL**

Hardeep S. Rai, Esq., Law Office of Hardeep S. Rai, San Francisco, California, for the petitioner.

Norah Ascoli Schwarz, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

ALARCÓN, Circuit Judge:

Rajinder Singh petitions for review of the Board of Immigration Appeals' ("BIA") decision to deny his application for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100-20, at 20 (1988), 23 I.L.M. 1027, 1028 (1984) ("Convention Against Torture"). We grant the petition for review because we conclude that the Immigration Judge's ("IJ") credibility findings are not supported by substantial evidence. We remand for further proceedings to determine whether, accepting Mr. Singh's testimony as credible, he is eligible for asylum or withholding of removal. We deny Mr. Singh's petition for relief under the Convention Against Torture because substantial evidence supports the BIA's dismissal of that claim.

## I

Mr. Singh is a native and citizen of India, born on June 10, 1974 in Punjab, India. He is single, not politically active, and a nonbaptized Sikh. Mr. Singh entered the United States on or about November 18, 1997, using a false passport. On April 17, 1998, the Government issued a Notice to Appear alleging that Mr. Singh entered the U.S. illegally. Mr. Singh applied for asylum, withholding of removal, and relief under the Convention Against Torture on April 24, 1998, and appeared before the IJ on June 23, 1998 in response to the Notice to Appear. Through counsel, he conceded removability and admitted the factual allegations in the notice.

Mr. Singh testified at the August 27, 1998 and December 28, 1998 asylum proceedings that he worked in India as a driver in his family's trucking business. On August 15, 1996,

Indian Independence Day, approximately forty members of a Sikh separatist group approached Mr. Singh and asked him to transport them to a demonstration in support of an independent Sikh state. Mr. Singh testified that he was unsure how many times he had transported protesters before this. He agreed to do so on this occasion in exchange for diesel fuel. On the way to the rally, the separatists shouted "long live Khalistan, death to the Punjab police" and waived flags bearing the same slogan. Before they reached their destination, the police stopped Mr. Singh and accused him of "inciting people against the government." The police arrested Mr. Singh and took him to the Jalandhar police station. There, Inspector Mangl Ram and four other policemen removed Mr. Singh's clothes and proceeded to kick and beat him with a leather strap on his legs and genitals for approximately thirty to forty-five minutes, until he was unconscious.

During the beating, the policemen interrogated Mr. Singh about his transportation of Sikh protestors, inciting them against the government, and having "connections with terrorists." Two days later, the same officers returned around noon and resumed their interrogation and physical assaults. The police detained Mr. Singh for seventeen days. Mr. Singh was released after his father and uncle paid a bribe of 45,000 rupees.

Upon his release, Mr. Singh received medical treatment from his village doctor. Mr. Singh was hospitalized at Dhillon Hospital, where he received medication, bandages, and ointments for his wounds. Mr. Singh's truck also required repairs because the police had slashed its tires and broken the mirrors.

On January 24, 1997, two days before another politically significant day in India, the police raided Mr. Singh's parents' home in the early morning hours looking for Mr. Singh. The officers warned Mr. Singh's father that his son "would not be spared" if he were arrested or if he transported protesters to

another demonstration. Mr. Singh's father contacted Mr. Singh and told him that it was not safe for him to return home. Instead, he went to Patiala, where he stayed with relatives for about a month.

Mr. Singh paid an agent 600,000 rupees to arrange for his entry into the United States. The agent first sent Mr. Singh to Bangkok, Thailand on a seven-month visa. Mr. Singh stayed at a Sikh temple in Bangkok. When his Thailand visa expired, Mr. Singh entered the United States illegally. Since Mr. Singh left India, the police have raided his home at least twice seeking to apprehend him.

The IJ denied Mr. Singh's asylum application and ordered him removed to India. The IJ found that Mr. Singh's testimony was implausible and not credible. Alternatively, the IJ found that even if Mr. Singh's testimony were accepted as truthful, he had not demonstrated that he had suffered past persecution because of imputed political opinion. The BIA affirmed in a per curiam decision dated February 25, 2003. The BIA's opinion included a short footnote denying Mr. Singh's claim under the Convention Against Torture because he had "not proffered prima facie evidence that it was more likely than not that he would be tortured if he returned to India." Mr. Singh timely petitioned for review on March 24, 2003. We have jurisdiction over this petition pursuant to 8 U.S.C. § 1252(a)(1).

## II

**[1]** Mr. Singh contends that his petition for review should be granted because substantial evidence does not support the IJ's finding that his testimony was not credible. We review adverse credibility determinations for substantial evidence and reverse only if the evidence compels a contrary conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Chen v. Ashcroft*, 362 F.3d 611, 616 (9th Cir. 2004). Although this standard is deferential, the IJ or BIA must identify "spe-

cific, cogent reasons" for an adverse credibility finding, and the reasons must be substantial and legitimately connected to the finding. *Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir. 2004); *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996) (quoting *Mosa v. Rogers,* 89 F.3d 601, 604 (9th Cir. 1996), *superceded by statute on other grounds*, 8 U.S.C. § 1252(g) (1996), Pub. L. No. 104-208, 110 Stat. 3009). This means that the reason identified must "strike at the heart of the claim" for asylum. *Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004).

**[2]** "Minor inconsistencies . . . that do not relate to the basis of an applicant's alleged fear of persecution, [or] go to the heart of the asylum claim" do not generally support an adverse credibility finding. *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003). An IJ must also afford petitioners a chance to explain inconsistencies, and must address these explanations. *Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004); *Chen*, 362 F.3d at 618. Finally, an IJ may not base adverse credibility determinations on speculation or conjecture not supported by evidence in the record. *Ge v. Ashcroft*, 367 F.3d 1121, 1124-25 (9th Cir. 2004); *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). We independently review each ground the IJ cites in support of an adverse credibility finding. *Zheng v. Ashcroft*, 397 F.3d 1139, 1143 (9th Cir. 2005).

## A

**[3]** The IJ found that Mr. Singh's testimony describing the beating administered by the police after his arrest was not credible. She noted that Mr. Singh's description of how the police laid him on his back, as well as how two of them "were holding [him] from behind," was "contradict[ory]." Mr. Singh explained, however, that the officers first tied his arms behind his back, then later untied his arms, laid him out on the floor, and kicked him. When he tried to sit up, they forced him back down by sitting on his chest. The IJ did not address Mr. Singh's explanation of this alleged inconsistency. Because

"[a]n adverse credibility finding is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency," this testimony does not provide substantial evidence to support an adverse credibility determination. *Kaur*, 379 F.3d at 887.

**B**

**[4]** The IJ also found that Mr. Singh was not credible because of perceived inconsistencies in the evidence regarding which family member paid the bribe to secure Mr. Singh's release from police custody. Mr. Singh's uncle alleged in his affidavit that he paid the bribe. In their affidavits, both Mr. Singh's father and the village sarpanch alleged that his father paid the bribe. Mr. Singh explained that his uncle and father procured and delivered the money together. Any inconsistency as to who paid the bribe does not go to the heart of Mr. Singh's claim. Therefore, it does not provide substantial evidence to support a finding of adverse credibility. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000) (explaining that petitioner's asylum application statement that his father paid an influential man to gain his release and petitioner's testimony that his grandfather bribed a government official to gain his release were not inconsistent statements justifying an adverse credibility finding).

**C**

The IJ also based her credibility finding on Mr. Singh's testimony regarding the threats made during the first police raid of his home. The transcription of Mr. Singh's testimony on direct examination is garbled and includes "indecipherable" notations at key points. The record shows, however, that Mr. Singh testified that while making a delivery in Delhi, he called his father, who told him the police had raided his home and warned him that it would be dangerous for Mr. Singh to return to his home. This testimony is consistent with Mr. Singh's statements in his asylum application. Mr. Singh

asserted in his application that he believed he would be killed because the police threatened his parents that if he "was caught, [he] would be taught a lesson forever."

[5] On cross-examination, Mr. Singh testified that he thought the police raided his house because they anticipated he would participate in the January 26 protests, and warned his father "if [Mr. Singh] gets arrested again, he will not be spared." When pressed as to why he was still afraid after he did not transport protesters on the 26th, Mr. Singh responded that he believed he would be in danger not only if he were to be arrested again, but also if he were to return home. Mr. Singh's testimony on cross-examination is consistent with his direct testimony and the statements in his asylum application that Mr. Singh's father told Mr. Singh it was not safe for him to return to his home. The IJ's finding to the contrary is not supported by the record.

## D

The IJ further found that Mr. Singh's statements about his reasons for entering the United States were "clearly contradictory" and incredible. The IJ stated that Mr. Singh testified he "told the agent to bring him to the United States, but later said that the reason he came here is that that was the only place the agent would bring him." Mr. Singh testified that he paid an agent in Delhi, Vijay Kumar, 600,000 rupees to arrange for his entry into the United States. Mr. Kumar sent him to Bangkok, where he stayed for seven months, until his visa expired. At some point, Mr. Singh instructed the agent that he wanted to go to America. The agent told Mr. Singh that "the only place he can take [Mr. Singh] is America," and that, "the game I'm playing is that I can take you to America." Mr. Singh reiterated in subsequent testimony that he entered the United States pursuant to his agreement with the agent.[1]

---

[1]The verbatim record of the asylum proceedings does not demonstrate that Mr. Singh's testimony was contradictory:

**[6]** The IJ also erred in failing to explain how the purported inconsistency significantly relates to his asylum claim. *See Singh v. Ashcroft*, 362 F.3d 1164, 1171 (9th Cir. 2004) (it is "well-established law" that an IJ must "clarify why [a] purported discrepancy [is] significant"). Finally, to the extent the IJ discredited Mr. Singh's testimony based on his decision not to seek asylum in Thailand, that is not a proper ground for undermining credibility. *See Ding v. Ashcroft*, 387 F.3d 1131, 1139-40 (9th Cir. 2004) (citing *Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir. 1986)) (IJ improperly considered the petitioner's failure to apply for asylum in Thailand while there on a business trip).

**E**

The IJ further supported her credibility findings with perceived inconsistencies regarding Mr. Singh's driver's license.

| | |
|---|---|
| Court: | Well, your attorney is trying to find out why you were so determined to come here that you wouldn't stay some place else that was safe. |
| Singh: | The deal with the agent was that he would take me to American [sic] and the agent has said he's [sic] game is to transport people to America. I already had paid him the money. |
| Court: | So, you can't tell me why, when you paid him the money, your instruction was to come to America? |
| Singh: | Yes, Your Honor. . . . |
| Court: | But, you cannot tell me that. Okay. |
| Singh: | Your Honor, I don't understand the question. |
| Court: | You've been asked several times, sir, why it was your goal to come to this country rather than some other country. You testified that you told the agent to bring you here. Why did you tell the agent to bring you here instead of some other country? |
| Singh: | When I talked to the agent he said the only place he can take me is America. He said that's the game he is playing. |

She noted that Mr. Singh was unclear as to how long the license was valid and contradicted himself about how the license arrived from India. She did not explain how these alleged inconsistencies were significant.

Mr. Singh stated at the first asylum proceeding that his driver's license had been lost. At the second asylum proceeding, he produced a driver's license his family had mailed to him, which he explained was one of two licenses in his name, a "heavy" and a "smaller" license. Mr. Singh could not remember the exact date the "smaller" license arrived in the mail from India, and eventually explained that he was away for the Christmas holiday when it arrived.

**[7]** Mr. Singh was also unclear as to how long his license was valid. He stated he "[thought] its only good for 10 years," but when asked why his license, issued in 1993, appeared to be valid until 2013, he explained that "[o]ver there nothing is fixed" and that "it's up to them for how long . . . it's going to be good for." The IJ was not satisfied by this explanation and refused to admit into evidence Mr. Singh's license as proof of his identity. However, without an indication from the IJ as to why this testimony is significant, the perceived inconsistencies concerning Mr. Singh's license are minor and cannot support an adverse credibility finding. *See Mendoza-Manimbao*, 329 F.3d at 660; *see also Singh*, 362 F.3d at 1171.

**F**

**[8]** The IJ also found Mr. Singh's description of the questions the police asked while beating him not credible because it was "extremely general." Mr. Singh testified that the policemen told him to confess to "whatever was done" and that he had "connections with terrorists." This finding rests on speculation about what types of questions the IJ believed Indian officials would ask in such a situation. This is an impermissible ground for determining credibility. *See Ge*, 367 F.3d at 1124-25 (IJ's personal conjecture about what Chinese authori-

ties would do in a given situation is impermissible basis for adverse credibility finding). Accordingly, the evidence does not support the IJ's finding that this testimony was vague or confusing, nor does it support an adverse credibility determination.

**[9]** The IJ also found Mr. Singh's testimony about the Sikh religion to be vague because he provided conflicting and garbled answers when asked about differences between the various types of Sikhs. However, Mr. Singh's claim of persecution is based on *imputed* political opinion. His knowledge of the Sikh religion is not relevant to his claim that the police persecuted him because they believed he was a Sikh or shared the views of Sikh separatists or terrorists. *See Hernandez-Ortiz v. INS*, 777 F.2d 509, 517 (9th Cir. 1985) (under an imputed political opinion theory, the applicant's actual beliefs are irrelevant).

## G

The only inconsistency the IJ cites which arguably goes to the heart of Mr. Singh's claim is his inability to recall whether he transported demonstrators to rallies "many times," as he initially testified, or only once or twice, as he later testified.

A single supported ground for an adverse credibility finding is sufficient if it "relates to the basis for [petitioner's] alleged fear of persecution" and goes to the heart of the claim. *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir. 2001) (quoting *de Leon-Barrios v. INS*, 116 F.3d 391, 393 (9th Cir. 1997). An inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled. *Id.* at 1043 (citing *Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990)).

However, an inconsistency that concerns the basis for a petitioner's claim of persecution will not necessarily support an adverse credibility finding. In *Vilorio-Lopez v. INS*, 852

F.2d 1137 (9th Cir. 1988), the petitioner and his cousin testified that they were chased through the streets of San Salvador by a right-wing death squad. *Id.* at 1142. The IJ discredited the petitioner's testimony because his testimony conflicted with his cousin's as to the year of the incident, the length of time the men were sheltered from the death squad, and whether payment was made for their accommodation. *Id.* at 1139-40. In all other respects, the two men testified consistently. *Id.* at 1142. Even though the inconsistency concerned events central to petitioner's version of why he was persecuted and fled, we rejected it as a basis for the IJ's adverse credibility determination, holding that "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." *Id.* at 1142 (citing *Damaize-Job*, 787 F.2d at 1337-38).

**[10]** Similarly, here, neither the IJ nor the Government points to any inconsistency in Mr. Singh's testimony concerning his version of why he was persecuted and fled India, *to wit*, his transportation of the protesters on August 15, 1996, his arrest and subsequent detention and beating by the police, and the police raid of his home in January 1997. The number of times Mr. Singh transported protesters reveals nothing about the events that caused him to fear for his safety. Therefore, an inconsistency about the number of times Mr. Singh transported protesters in the past in no way taints Mr. Singh's consistent testimony about the events that formed the heart of his asylum petition. *See Jibril v. Gonzales*, 423 F.3d 1129, 1134 (9th 2005) ("a person who provides inconsistent testimony on any *one* matter should still be presumed credible as to *all* other matters") (emphasis in original). "A reasonable adjudicator would be compelled to conclude that the factual findings underlying the . . . adverse credibility finding were not supported by substantial evidence." *Wang v. Ashcroft*, 341 F.3d 1015, 1022 (9th Cir. 2003).

## H

**[11]** The IJ also based her adverse credibility determination on Mr. Singh's alleged failure to present proper corroborating documentation. Supporting documentation is required only when the applicant's testimony alone is insufficient to support the claim. *Salaam v. INS*, 229 F.3d 1234, 1239 (9th Cir. 2000). Because the IJ's credibility determination rested on insufficient and impermissible grounds, Mr. Singh's testimony should be deemed credible, eliminating the need for corroborating evidence. *See id.*

The IJ found Mr. Singh had not sufficiently proven his identity, in part because he lacked proper identification documents. The IJ did not admit Mr. Singh's birth certificate into evidence because of perceived irregularities in the document. The original 1974 certificate appears to state that it was issued under the 1960 Birth and Death Act. The IJ stated that all valid Indian birth certificates after 1970 were issued under the 1969 act. The IJ based this conclusion on her recollection of the State Department Foreign Affairs Manual for India, which is not in the record. Because the IJ's statement about Indian birth certificates is speculation not supported by the evidence, it is not a proper basis for a credibility determination. *See Shah,* 220 F.3d at 1071.

The IJ further noted that the submitted translation of the birth certificate did not reflect the reference to the 1960 act found in the original document. However, an irregular translation cannot alone support an adverse credibility finding. *See Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004) (even where an applicant submits a potentially fraudulent document that goes to the heart of the claim, it cannot support an adverse credibility finding where the totality of the evidence weighs in favor of the applicant's credibility).

The IJ also discredited the affidavits from Mr. Singh's relatives and the village sarpanch because they contain essentially

the same language. The IJ discussed this perceived problem with counsel at the hearing, but never asked Mr. Singh to explain. The IJ also noted that the seals of notarization were "markedly different," and stated that a missing "s" at the end of the word "understand" in the notarial stamp was significant. She speculated that because "[n]otaries in Mexico . . . are lawyers, you know, who have a pretty high standing in the government," a notary in India must be of a similarly high official capacity and would not use a stamp with a typographical error in it. The IJ did not explain why the differing notarizations make them unreliable. In fact, the IJ admitted the affidavits into the record.

Similarly, although the IJ admitted Dr. Sukhdeep's affidavit confirming Mr. Singh's postdetention medical treatment, she commented on the implausibility of an Indian doctor who wrote and signed his affidavit in English misspelling the word "knee." Such speculation about an unknown Indian doctor's English proficiency cannot discredit an otherwise proper document. *See Ge*, 367 F.3d at 1124-25 (IJ's personal conjecture about what Chinese authorities would do in a given situation is an impermissible basis for adverse credibility finding).

The affidavits were consistent with Mr. Singh's testimony and the statements in his asylum application. They do not support an adverse credibility determination. *See Kaur,* 379 F.3d at 887 (IJ's credibility determination based on a spelling error in petitioner's passport was "personal conjecture about the manner in which Indian passport officials carry out their duties" and was not supported by "cogent" reasons).

**[12]** An overall review of Mr. Singh's testimony reveals that the IJ's adverse credibility determination is not supported by substantial evidence, and compels reversal of the BIA's order affirming the IJ's decision.

## I

The IJ also found Mr. Singh's claim implausible on the merits. A finding that testimony is "implausible" indicates

disbelief. An IJ's comments regarding "implausibility" are treated as grounds for an adverse credibility finding. *Salaam*, 229 F.3d at 1238. The IJ's skepticism as to the plausibility of Mr. Singh's account may be a proper basis for finding his testimony is inherently unbelievable, if her logical inferences are supported by substantial evidence. *Id.* They are not.

The IJ found there was no rational basis to believe that the police would pursue someone who only participated once in a political activity because the "documentary evidence" showed that the Indian police would pursue only "people who are known militants or who are heavily committed and involved" in the separatist movement. The Department of State Report on conditions in India was admitted into the record. The IJ stated in her decision that this report indicated "the Khalistan movement is at a much reduced state from the way the respondent describes these rallies."[2] While an IJ may use a Department of State Report to discredit a generalized statement about a country, it may not be used to discredit specific testimony regarding a petitioner's experience. *See Zheng*, 397 F.3d at 1143-44 (IJ improperly discredited petitioner's testimony that the Chinese government forced his wife to abort her first child because the China country conditions report described no such incidents). The IJ's reliance on general descriptions in the State Department report to find Mr. Singh's testimony implausible and incredible was thus improper.

---

[2]The State Department Report describes a major reduction in militant Sikh terrorism as a result of an antiterrorism campaign in 1991-92. It notes that "within Punjab, the demand for a separate Sikh state is confined to a relatively small group of activists." It further notes that "Hindus as well as Sikhs and other minorities are arrested, detained, interrogated and abused in Punjab and elsewhere in India for aiding terrorists of various political persuasions."

**III**

In an alternative holding, the IJ stated that "if respondent's testimony were credible . . . I don't think these facts could support an asylum claim" and that "[Singh's] claim would fail regardless." The IJ did not provide support for this conclusion beyond expressing frustration with the inconsistency and implausibility of Mr. Singh's claim. Mr. Singh contends that his testimony and other evidence on the record show past persecution, and that the Government has failed to rebut this showing with evidence of changed conditions in India.

In determining whether an applicant was subjected to past persecution, we review the record for substantial evidence. *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 869 n.6 (9th Cir. 2003).

To establish eligibility for asylum, an applicant is required to demonstrate that he or she is a "refugee" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(42)(A). The Attorney General has the discretion to grant asylum to aliens who qualify as refugees. 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as "any person who is . . . unable or unwilling to return to . . . [his or her home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Physical abuse, such as a beating, constitutes persecution under this statute. Past persecution raises a presumption of a "well-founded fear" of future persecution. *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir. 2000); *Gaya Prasad v. INS*, 101 F.3d 614, 617 (9th Cir. 1996) (citing 8 C.F.R. § 208.13(b)(1)(I)). However, there must be evidence that the mistreatment constituting persecution was "on account of" one of the statutorily enumerated grounds. *Elias-Zacarias*, 502 U.S. at 481-82. The applicant may prove this nexus with circumstantial evidence, including evidence of the timing and substance of the persecution. *Deloso v. Ashcroft*,

393 F.3d 858, 864-65 (9th Cir. 2005); *Gafoor v. INS*, 231 F.3d 645, 650-52 (9th Cir. 2000) (statements made during persecution may be evidence of motive)*; Sangha v. INS*, 103 F.3d 1482, 1486-87 (9th Cir. 1997).

**[13]** Having found that the IJ's adverse credibility determination was not supported by substantial evidence, we accept Mr. Singh's testimony as true. *See Katarina v. INS,* 232 F.3d 1107, 1113-14 (9th Cir. 2000) (treating the petitioner's testimony as true and credible after reversing adverse credibility determination). As described in Mr. Singh's testimony, the timing and circumstances of his arrest and beating point to two possible motives: imputed political opinion, which is a statutorily protected ground, or probable cause to believe that he was engaged in terrorist activities. *See Singh v. Ilchert,* 63 F.3d 1501, 1509 (9th Cir. 1995) (abuse because of imputed Sikh separatist ideologies was persecution on account of a protected ground). The police took Mr. Singh into custody after seeing him with a group of protesters who were screaming "long live Khalistan, death to the Punjab police." Mr. Singh testified that the police accused him of transporting people to the rally, "inciting people against the government," and of being a "terrorist."

**[14]** The fact that the police may have acted pursuant to an anti-terrorism law would not necessarily rule out a statutorily protected motive. *See, e.g., id.* at 1508-09 (mistreatment constituted political persecution where Indian authorities extensively abused vague anti-terrorism laws to suppress political dissent and stamp out secessionist ideologies); *See also Zhang v. Ashcroft*, 388 F.3d 713, 719-21 (9th Cir. 2004) (Zhang was entitled to withholding of removal on account of imputed political opinion and religious persecution where Chinese authorities threatened to arrest Zhang for participating in anti-government activity because he practices Falun Gong, a practice based, in part, on spiritual or religious principles which Chinese authorities have banned).

However, where there is evidence of a legitimate prosecutorial purpose, foreign authorities enjoy much latitude in vigorously enforcing their laws. *See Dinu v. Ashcroft*, 372 F.3d 1041, 1043-44 (9th Cir. 2004) (legitimate prosecutorial purpose existed for a "heavy-handed" investigation of shootings during civil uprising); *Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir. 1995) ("if there is no evidence of a legitimate prosecutorial purpose for a government's harassment of a person . . . there arises a presumption that the motive of the harassment is political").

**[15]** Nor does a mixed motive defeat an asylum claim, as long as one of the motives is a protected ground. *Chanchavac v. INS*, 207 F.3d 584, 592 (9th Cir. 2000). Mr. Singh need not show that his persecutors were motivated solely or primarily by a protected ground. *See Gafoor*, 231 F.3d at 650 (mistreatment motivated by both the applicant's ethnicity and revenge was on account of a protected ground although "the protected ground, by itself, would [not] have led to the persecution"); *see also Nuru v. Gonzales*, 404 F.3d 1207, 1228-29 (9th Cir. 2005) (even if desertion constitutes a lawful basis for punishing Nuru, he would still be able to show persecution on a statutorily protected ground if the punishment were also imposed in part on account of his political opinion). Here, however, because of her credibility findings, the IJ did not determine whether Mr. Singh was arrested because of terrorist activities or his imputed political beliefs.

## IV

**[16]** Where a court of appeals holds that an IJ's or BIA's adverse credibility finding is not supported by substantial evidence, it must remand the matter to the agency for a consideration of factual questions that may be dispositive of the petition. *INS v. Ventura*, 537 U.S. 12, 16 (2002) (holding that "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

It would be improper for this Court to determine in the first instance whether the evidence supports the conclusion that the police persecuted Mr. Singh on account of a protected ground, or that they did so as part of a legitimate anti-terrorist campaign. The IJ's brief discussion of the logical implausibility of Mr. Singh's testimony is not an adequate analysis of this question because it fails to address whether Mr. Singh has proven persecution on a *protected* ground. *See Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir. 2000) (implausibility is treated as adverse credibility finding and is not a standard under which to review the merits of a persecution finding); *see Lopez*, 366 F.3d at 806-07. Were we to determine persecution and motive on this record, we would "independently creat[e] potentially far-reaching legal precedent . . . without giving the BIA the opportunity to address the matter." *Ventura*, 537 U.S. at 17.

## V

To establish eligibility for withholding of removal, an applicant must meet "a more stringent" standard of proof than is required for asylum. *Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000). The applicant must establish a " 'clear probability' that he would be persecuted were he to be deported to his home country." *Id.* The applicant must prove "it is more likely than not that [he or she] will be persecuted on account of a statutorily-protected ground." *Id.* (internal quotation marks omitted). Just as the evidence on record is insufficient to decide whether Mr. Singh was persecuted on account of a protected ground for the purposes of his asylum claim, so too is this issue unclear for the purposes of his withholding claim.

## VI

The BIA held that Mr. Singh failed to present prima facie evidence of a Convention Against Torture claim. We review for substantial evidence the factual findings underlying the BIA's determination that an applicant is not eligible for relief

under the Convention Against Torture. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (2003).

To be eligible for withholding of removal under the Convention Against Torture, the applicant must show "he is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment." *Nuru v. Gonzalez*, 404 F.3d 1207, 1221 (9th Cir. 2005) (internal citations omitted). The standard for such claims is distinct from the standard for asylum claims and withholding of removal. *Farah v. Ashcroft,* 348 F.3d 1153, 1156-57 (9th Cir. 2003); *see Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001) (under the Convention Against Torture, a petitioner "need not show that he or she would be tortured 'on account of' a protected ground"). The record evidence does not compel a finding that it is more likely than not that Mr. Singh will be tortured upon returning to India.

[17] Moreover, to be eligible for relief under the Convention Against Torture, Mr. Singh bears the burden of proving he "would be unable to live elsewhere in the country safely." *See Hasan v. Ashcroft*, 380 F.3d 1114, 1123 (9th Cir. 2004) (petitioner feared mistreatment as retaliation for criticism of local politicians, but did not produce evidence of his inability to escape mistreatment by internally relocating and was thus ineligible for relief). If Mr. Singh's fear is based on the mistaken belief of police in a certain area, he would presumably be safe in another area of India where the police do not take him for a separatist. The record contains no evidence that simply being an apolitical Sikh would cause police to torture Mr. Singh if they do not believe he is a separatist. Therefore, substantial evidence supports the BIA's conclusion that Mr. Singh has not proffered prima facie evidence of his eligibility for relief under the Convention Against Torture.

## CONCLUSION

We GRANT the petition for review of the BIA's dismissal of Mr. Singh's claims for asylum and withholding of removal

and REMAND for further proceedings to determine whether, accepting his testimony as credible, he is eligible for relief.

We DENY the petition for review of the BIA's dismissal of his claim for relief under the Convention Against Torture.

Costs on appeal are awarded to the petitioner.