Daniel RUSU, Petitioner,

v.

Michael B. MUKASEY, Attorney
General, Respondent.

No. 05–70830.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 23, 2008.

Filed Oct. 31, 2008.

Jagdip Singh Sekhon, Esquire, Sekhon
& Sekhon, PLC, San Francisco, CA, for
Petitioner.

Mark L. Gross, Esquire, DOJ—U.S. De-
partment of Justice, Kathryn R. Haun,
Judith Reed, Esquire, Office of the Attor-
ney General United States Department of
Justice, Maura K. Lee, Esquire, U.S. De-
partment of Justice, Civil Division/Office of
Immigration Litigation, Judith Reed, Es-
quire, Washington, DC, Ronald E. Le-
fevre, Office of the District Counsel De-
partment of Homeland Security, San
Francisco, CA, for Respondent.

Before: SCHROEDER, D.W.
NELSON, and REINHARDT, Circuit
Judges.

MEMORANDUM *

Daniel Rusu petitions for review of the
BIA's decision affirming the Immigration
Judge's (IJ) denial of his application for
asylum and withholding of removal. We

* This disposition is not appropriate for publica-
tion and is not precedent except as provided
by 9th Cir. R. 36–3.

grant the petition in part, deny it in part, and remand to the BIA.

Because the BIA cited *Matter of Burbano,* 20 I & N Dec. 872, 874 (BIA 1994), and for the most part, adopted the IJ's decision in its entirety, the court reviews the IJ's reasons as the BIA's, *see Tchoukhrova v. Gonzales,* 404 F.3d 1181, 1188 (9th Cir. 2005).

Determinations by the administrative agency involving purely legal questions are reviewed by this court de novo. *See Thomas v. Gonzales,* 409 F.3d 1177, 1182 (9th Cir.2005) (en banc). Factual findings underlying the denial of an application for asylum and withholding of removal are reviewed for substantial evidence. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Li v. Ashcroft,* 356 F.3d 1153, 1157 (9th Cir. 2004) (en banc). The BIA will be reversed only where "the evidence presented by Petitioners was such that a reasonable fact-finder would be compelled to conclude that Petitioners were persecuted or had a well-founded fear of future persecution." *Li,* 356 F.3d at 1157.

## A. ASYLUM

The IJ held Petitioner's asylum application was untimely. An alien is barred from applying for asylum if he does not do so within one year of his arrival in the U.S. 8 U.S.C. § 1158(a)(2)(B). There is an exception for those aliens who can demonstrate "extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). The delay must be "reasonable," and the extraordinary "circumstances must be directly related to the alien's failure to file the application." This court has jurisdiction to review the IJ's extraordinary circumstances finding because the facts are undisputed. *See Dhital v. Mukasey,* 532 F.3d 1044, 1049 (9th Cir.2008).

Petitioner argues that the IJ failed to consider his argument that his father's illness amounted to an exceptional circumstance under 8 C.F.R. § 208.4(a)(5)(v), re-designated as § 1208.4(a)(5)(vi). Petitioner is incorrect. The IJ's decision indicates that she understood Petitioner was relying on his father's illness to establish "extraordinary circumstances." The IJ's decision states that "[t]he respondent argued that he did not file his asylum timely because ... his father was suffering from ill health," and the IJ's decision includes general language that suggests she did consider Petitioner's argument: "Respondent has not established that his failure to comply with the 1 year filing deadline was a result of any medical or mental condition constituting extraordinary circumstances. There is not evidence to show that he was ever in any circumstances beyond his control." *Cf. Sagaydak v. Gonzales,* 405 F.3d 1035, 1040–41(9th Cir.2005).

 On the merits, the record does not compel the conclusion that Petitioner's untimely filing should be excused because of extraordinary circumstances. Petitioner waited over four years after the one-year deadline to file his application. He was not caring for his father who was in Romania. Also, it is unclear how his father's illness "related" to the delay. *See* 8 C.F.R. § 208.4(a)(5). Furthermore, Petitioner argues that the last four years of the delay were due to his ignorance of the exception to the deadline, but ignorance of the law is rarely enough. *See Antonio–Martinez v. INS,* 317 F.3d 1089, 1093 (9th Cir.2003). Petitioner's asylum claim is therefore time-barred.

## B. WITHHOLDING OF REMOVAL

 Petitioner also challenges the denial of his application for withholding of removal. Although the IJ held Petitioner's asylum application untimely, the IJ

also held, in the alternative, that his treatment in Romania did not rise to the level of past persecution and that he failed to demonstrate a well-founded fear of future persecution. Based on that holding, the IJ denied Petitioner's application for withholding of removal. Because the IJ based her analysis of withholding of removal on her analysis of the asylum claim, we must review the underlying asylum claim.

### 1. Past Persecution

#### a. Treatment rises to level of persecution

Persecution is " 'an extreme concept,' marked by 'the infliction of suffering or harm ... in a way regarded as offensive.' " *Li,* 356 F.3d at 1158 (citing *Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc)). The court looks at "the totality of the circumstances" to determine whether treatment rises to the level of persecution. *Guo v. Ashcroft,* 361 F.3d 1194, 1203 (9th Cir.2004) (citing *Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir.1998)).

Repeated detention and assault constitute persecution. *See, e.g., Guo,* 361 F.3d at 1197–98 (applicant detained twice, for one and a half days and fifteen days, during which he was hit and kicked, forced to do pushups, hit with an electrically-charged baton, and beaten with a plastic pole while tied to a chair); *Gafoor v. INS,* 231 F.3d 645, 650 (9th Cir.2000) (applicant assaulted, held captive for a week, and beaten until unconscious). Petitioner was detained at least four times, ranging in duration from three days to two weeks, during which time he was severely beaten, sometimes to the point where he lost consciousness and required medical attention. Petitioner's assailants also threatened his life, and those threats "alone can constitute persecution," *see Boer–Sedano v. Gonzales,* 418 F.3d 1082, 1088 (9th Cir.2005). Taken as a whole, this clearly rises to the level of persecution. *See, e.g., Chand v.*

*INS,* 222 F.3d 1066, 1073–74 (9th Cir.2000) (finding "persecution" where applicant was subjected to physical violence on three different occasions).

#### b. Persecution on account of a protected ground

Because it is difficult to prove motive conclusively, Petitioner need only "provide *some* evidence ... [that his persecutors were motivated by his religion], direct or circumstantial." *Elias–Zacarias,* 502 U.S. at 483, 112 S.Ct. 812. "[U]ncontroverted and credible testimony is sufficient to establish that ... [an applicant] was persecuted on account of [a protected ground]." *Shoafera v. INS,* 228 F.3d 1070, 1075 (9th Cir.2000).

The IJ found that there was no nexus between Petitioner's persecution and a protected ground because his detentions were based on his violations of Romanian law and complaints to the military. "[W]here there is evidence of a legitimate prosecutorial purpose, foreign authorities enjoy much latitude in vigorously enforcing their laws." *Singh v. Gonzales,* 439 F.3d 1100, 1111 (9th Cir.2006); *see also Chanco v. INS,* 82 F.3d 298, 302 (9th Cir. 1996). A petitioner, however, only has to show a "mixed motive" for the persecution. *Singh,* 439 F.3d at 1112. "[A]s long as *one* of the motives is a protected ground," Petitioner meets the nexus requirement. *Id.* (emphasis added).

The evidence compels a finding that Petitioner was persecuted, at least in part, on account of his Baptist faith. Petitioner was detained for two weeks and severely beaten as a result of breaking the seal placed on the Baptist church. "[R]esistance to discriminatory government action ... is persecution on account of a protected ground." *Guo,* 361 F.3d at 1203 (harm suffered because of attempt to prevent police from "taking down a cross from a

tomb" constitutes persecution on account of religion) (internal quotations marks omitted).

Furthermore, the police said they were punishing him because he was a Baptist and a traitor. *See Mihalev v. Ashcroft,* 388 F.3d 722, 727–28 (9th Cir.2004) (police had at least mixed motives for their actions where they used ethnic slurs); *Baballah v. Ashcroft,* 367 F.3d 1067, 1077 (9th Cir.2004). Although two of his subsequent detentions were related to unlawful attempts to flee the country, Petitioner testified that the beatings and length of detention were due in part to his Baptist faith. Indeed, the security forces called him a "Baptist" and "traitor" and said he "was causing [Romania] a lot of trouble." Such slurs demonstrate that the persecution was on account of his religion. *See, e.g., Baballah,* 367 F.3d at 1077; *Mihalev,* 388 F.3d at 727–28. His fourth detention, although related to his complaints regarding military service, evidences the same treatment: authorities detained him for three days, brutally beat him twelve times, and "cursed [him] ... as a Baptist." *See Karapetyan v. Mukasey,* 543 F.3d 1118, 1127–28 (9th Cir.2008) (persecution on account of ethnicity when applicant was called a "Russian pig," a "Chechnyan bastard," and a "Chechnyan pig," while being ordered to carry out undesirable jobs in military service). Similarly, during the last incident before he left Romania, which related, in part, to his attempt to bribe an officer to avoid his fourth military service, a police officer and three civilians beat him while calling him a "heretic" and "traitor."

### c. *Persecution committed by the government*

The factor is clearly met here because the police, government security forces, and military are governmental actors who were responsible for the deliberate attacks against Petitioner. *Chand,* 222 F.3d at 1073.

Because Petitioner established that he suffered past persecution, he is entitled to a presumption of eligibility for asylum and for withholding of removal. *See Baballah,* 367 F.3d at 1079; 8 C.F.R. § 208.16(b)(1)(i). The IJ did not apply this presumption in her well-founded fear of persecution analysis for asylum, and therefore did not apply it in the withholding analysis either. Accordingly, we remand to the BIA for consideration of whether the government can, by a preponderance of the evidence, rebut the presumption of Petitioner's eligibility for withholding. *See id.*

**PETITION DENIED AS TO ASYLUM, GRANTED WITH RESPECT TO WITHHOLDING OF REMOVAL, and REMANDED TO THE BIA** for consideration of withholding of removal under the correct legal standard.