**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROHIT KUMAR, | No. 08-72263 |
| Petitioner, | Agency No. A099-340-517 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM [*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 15, 2010
San Francisco, California

Before: NOONAN, HAWKINS and M. SMITH, Circuit Judges.

Rohit Kumar, a native and citizen of India, petitions for review of an order

by the Board of Immigration Appeals (BIA or Board) dismissing his appeal from

an immigration judge's (IJ) decision denying his application for asylum,

withholding of removal, and protection under the Convention Against Torture

(CAT). We assume the parties' familiarity with the facts and do not recount them

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

here, except as necessary to explain our decision. We have jurisdiction pursuant to 8 U.S.C. § 1252. We grant the petition for review and remand for further proceedings.

This court reviews adverse credibility determinations for substantial evidence, which means "the BIA's determination must be upheld if it is supported by reasonable, substantial and probative evidence from the record." *Kumar v. Gonzales*, 444 F.3d 1043, 1049 (9th Cir. 2006). On review of agency credibility determinations, we apply a "rule-of-reason" analysis, which gives ample deference to the agency, but must take into account the "totality of the circumstances." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). This court "independently review[s] each ground the IJ cites in support of an adverse credibility finding." *Singh v. Gonzales*, 439 F.3d 1100, 1105 (9th Cir. 2006). "Where the BIA has reviewed the IJ's decision and incorporated portions of it as its own, [this court] treat[s] the incorporated parts of the IJ's decision as the BIA's." *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009) (internal quotation marks and ellipsis omitted).

Under the REAL ID Act, which governs this case, "credibility findings no longer need to go 'to the heart of the applicant's claim.'" *Id.* at 918 (quoting § 1158(b)(1)(B)(iii)). However, "an IJ cannot selectively examine evidence in

2

determining credibility, but must present a reasoned analysis of the evidence as a whole." *Shrestha*, 590 F.3d at 1040 (internal quotation marks omitted); *id.* at 1040-41 ("Nor do we expect a judge to selectively consider evidence, ignoring that evidence that corroborates an alien's claims and calls into question the conclusion the judge is attempting to reach." (quoting *Shah v. Att'y Gen. of U.S.*, 446 F.3d 429, 437 (3d Cir. 2006))).

## A. Alleged Inconsistencies

1. The first inconsistency cited by the IJ concerns how long it took Kumar to identify, as militants, the three men who came to his home. We find there to be no inconsistency in Kumar's testimony. On direct examination, Kumar testified that while the men did not identify themselves as militants, he "gathered" that they were "from their attire." He was not asked *when* he came to that conclusion. Nothing in the record indicates that Kumar even saw the men who entered his home until "after about five minutes" *of their arrival*, which is entirely consistent with Kumar's earlier testimony that he did not immediately see the militants when they first entered the house. Because Kumar never testified that he saw the men "at the moment that they entered the house," there is nothing inconsistent in Kumar's testimony as to when he first identified them as militants. In addition, the IJ could not properly base an adverse determination on the alleged inconsistencies

3

because she did not give Kumar an opportunity to reconcile them. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009).

2. With respect to the second alleged inconsistency, Kumar never testified that the *turbans* were either gold or yellow. Rather, when asked what the militants "look[ed] like," he stated, "If you look at them, they were using yellow fabric." When asked specifically to describe the men's turbans or patakas, he described them only as black. Furthermore, following the interpreter's request, Kumar immediately clarified his testimony; testimony that the IJ later determined to be "relatively detailed and specific." *See Sidhu v. INS*, 220 F.3d 1085, 1089 (9th Cir. 2000) (rejecting adverse credibility determination where petitioner immediately clarified his testimony to explain any discrepancy and otherwise testified with "great specificity"). In light of his continued insistence that the patakas were black, and that nowhere in his testimony did he ever describe them as anything but black, substantial evidence does not support the IJ's finding that his testimony on this issue was inconsistent.

3. As to the third alleged inconsistency, the IJ first noted that Kumar's declaration "strongly implies" a connection between the attack on parliament and the problems his family began to experience. Yet, according to the IJ, Kumar denied any such connection in his testimony when later explaining why the police

4

released him and why he was not arrested until a year and a half later. However, the IJ appears to have misinterpreted Kumar's claim and his testimony. Kumar never claimed to have any affiliation with Sikh militants. He never claimed to be among those militants who carried out the attack, nor did he have any idea why Sikh militants came to his house on December 15, aside from demanding that his family provide food and conceal a bag. Likewise, in his testimony, he disclaimed having any connection to the attack on parliament, aside from noting that the attack on parliament provided a possible explanation for why Sikh militants might have arrived at his home two days later. Though it is not entirely clear whether Kumar's claim is based on religion or imputed political opinion, his counsel submits it is the latter.[1] Therefore, it would not be inconsistent for *him* to disclaim any connection with the group, while maintaining that the *government believed* him to be a Sikh militant. *See Kumar*, 444 F.3d at 1054 ("an applicant can establish imputed political opinion based upon the *persecutor's erroneous belief* as to the applicant's political affiliation or opinion" (emphasis added)). Nowhere did Kumar claim any direct connection to such an attack, beyond his own status as a Sikh. Thus,

---

[1] Kumar's asylum application indicates that he is seeking asylum based on religion, but counsel before the IJ appears to have argued that at least an alternative ground for granting relief would have been "imputed political opinion."

5

substantial evidence does not support the IJ's adverse credibility determination on this issue.

4.      Fourth, according to the BIA, Kumar claimed in his declaration that militants left two bags at his father's store, while he testified that they left only one bag. The IJ considered any discrepancy to be "minor" and "not significant." However, there is no inconsistency at all. While the BIA described Kumar's declaration as "claim[ing] militants had left two bags at his father's store," the declaration states that the two men "*requested* me if I could keep this bag and the other bag which they were carrying with them because they wanted to go an eat something," (emphasis added), but continues, "I kept their *bag* in the storage and started attending my other customers." The IJ was correct in characterizing any alleged inconsistency as insignificant in light of Kumar's subsequent explanation. *See Shrestha*, 590 F.3d at 1044 (IJ should consider petitioner's explanation for a perceived inconsistency). The BIA's contrary finding is not supported by substantial evidence.

**B.      Alleged Implausibilities**

1.      First, the IJ considered Kumar's description of his first arrest and subsequent release to be implausible. The IJ stated: "The Court finds it implausible to believe that *if the police really found weapons at his home,* that soon

6

after an attack on parliament, they would have released the respondent merely for giving a bribe, believing him to actually be supporting militants." Rather, the IJ found more plausible "that the police released the respondent and his father because they were *not* suspected of having any connection with the attack on parliament or the weapons that were presumably found at their house." However, Kumar testified several times, and stated in his declaration, that the police never showed Kumar what was inside the bag seized from his home, but rather police *claimed* that the bag contained weapons. Thus, the IJ's determination that Kumar's testimony was implausible hinges on an "assumption" that contradicts substantial evidence in the record. *See Singh v. INS*, 292 F.3d 1017, 1024 (9th Cir. 2002) (rejecting Board's implausibility finding that was based on an "assumption" refuted by record evidence). In addition, "the IJ's assumptions about what the motives of the police should have been . . . are the sort of conjecture and speculation that cannot be used to support an adverse credibility determination." *Id.* On the other hand, the story that the IJ found to be plausible is entirely consistent with Kumar's testimony. Thus, substantial evidence does not support the IJ's determination.

2.     Next, the IJ found the details surrounding Kumar's second arrest to be implausible. Rather than addressing Kumar's explanation that it was customary

7

practice for shopkeepers to behave just as Kumar had, the IJ stated only that "the Court does not believe this a plausible explanation under the respondent's own circumstances." The IJ did not give any specific or cogent reasons as to *why* Kumar's explanation was implausible. However, "[a]n adverse credibility finding is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency." *Kaur v. Ashcroft*, 379 F.3d 876, 887 (9th Cir. 2004). "To ignore a petitioner's explanation . . . and relevant record evidence would be to make a credibility determination on less than the total circumstances in contravention of the REAL ID Act's text." *Shrestha*, 590 F.3d at 1044. Accordingly, the IJ's finding is not supported by substantial evidence.

3.     Finally, the IJ found implausible Kumar's explanation for not presenting his Canadian asylum application along with the Canadian decision denying his claim. While the IJ noted that the Canadian decision "is not required because it is not being reviewed by this Court," she considered the application to be "highly relevant" as a check on Kumar's credibility.

"The REAL ID Act changed the standard governing when a trier of fact may require corroborating evidence from where the evidence is 'easily available' to where the evidence is 'reasonably obtainable[.]'" *Id.* at 1047. However, in enacting the REAL ID Act's new corroboration standard, Congress meant to

8

incorporate the BIA's decision in *Matter of S-M-J*, 21 I. & N. Dec. 722 (BIA

1997). *See* H.R. Rep. No. 109-72, at 166. In *S-M-J*, the BIA held:

> [W]here it is reasonable to expect corroborating evidence for certain
> alleged facts pertaining to the *specifics of an applicant's claim*, such
> evidence should be provided. That is, an asylum applicant should
> provide documentary support for *material facts which are central to
> his or her claim* and easily subject to verification, *such as evidence of
> his or her place of birth, media accounts of large demonstrations,
> evidence of a publicly held office, or documentation of medical
> treatment. . . .* The absence of *such corroborating evidence* can lead
> to a finding that an applicant has failed to meet her burden of proof.

21 I. & N. Dec. at 725-26 (emphases added). This is consistent with our case law

interpreting the post-REAL ID Act standard. *See Aden v. Holder*, 589 F.3d 1040,

1043-47 (9th Cir. 2009) (IJ properly required corroboration of facts that were

central to the applicant's claim).

The type of corroborating evidence discussed in *S-M-J* and *Aden* and

contemplated by Congress in enacting the REAL ID Act is entirely different from

that which Kumar failed to provide. To the contrary, Kumar submitted extensive

corroborating evidence into the record that detailed general country conditions

against which to judge Kumar's claim and focused on Kumar's particular

circumstances. Indeed, throughout the IJ's decision, it indicated several times that

Kumar's claim that corrupt police officials would plant weapons on Kumar and

that the militant connection was merely an excuse for the police to extort money

9

was well-supported by the background documents. Kumar's "particular circumstances" are also supported by other corroborating evidence, in the form of a letter from a doctor in India, and affidavits from local officials and family members. Finally, we note that the IJ never asked Kumar for the Canadian asylum application, which it considered to be "highly relevant." *Contra Aden*, 589 F.3d at 1043.[2]

Therefore, the IJ's adverse credibility determination is not supported by substantial evidence. We express no opinion on the merits of Kumar's claim, which the Board did not reach.

Accordingly, we **GRANT** the petition for review, and **REMAND** for further proceedings to determine whether the petitioner is eligible for relief.

---

[2] Moreover, even assuming the Canadian application was relevant as a check on Kumar's credibility, he provided the IJ with a copy of the declaration he filed in Canada, which was consistent with his U.S. declaration in all material respects.