RIPPLE, Circuit Judge,
dissenting:
The immigration judge (“IJ”) who presided over Nirmal Singh’s removal hearing concluded that he was not credible based on a number of alleged inconsistencies and other issues with his testimony and the documentary evidence. Mr. Singh has argued to this court that the issues identified by the IJ reflect a serious misapprehension of the record. The record bears out his claim with respect to several of the *948 problems identified by the IJ. Indeed, the clarity of the record on many of these points is so persuasive that the Government — as the advocate charged with defending the IJ’s opinion before this court— opened its argument with the acknowledgment that “[m]uch of what the petitioner says about the adverse credibility finding has substance.” Oral Argument (9th Cir. June 13, 2011). Nevertheless, my colleagues reject Mr. Singh’s challenge, and in doing so, they place more stock in the credibility determination of the IJ than even its own advocate could. In my view, the Government’s concession, along with the serious problems with some of the IJ’s cited bases for the credibility determination that go unmentioned in the court’s opinion, should make us wary of relying on the remaining bases. For that reason, I respectfully dissent.
A.
The standards for review of credibility determinations by the agency bear repeating. We review for substantial evidence. Kaur v. Gonzales, 418 F.3d 1061, 1064 (9th Cir.2005). Even among other findings reviewed deferentially for substantial evidence, the credibility finding of an IJ is accorded “special deference,” and reversal is warranted only where the evidence “compel[s] a contrary conclusion.” Id. (alteration in original) (quotation marks omitted). Nevertheless, an IJ must support a credibility finding with specific and cogent reasons grounded in the record. Li v. Holder, 559 F.3d 1096, 1102 (9th Cir.2009). When the IJ provides such reasons, “this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible.” Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir.1988).[1]
Importantly, if we conclude merely that certain of the reasons provided by the agency lack support, that does not mean necessarily that the credibility determination must be overturned. “[S]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [the alien’s] claim of persecution, we are bound to accept the IJ’s adverse credibility finding.” Li v. Ashcroft, 378 F.3d 959, 964 (9th Cir.2004) (quotation marks omitted).
These highly deferential rules do not, however, relieve us of our responsibility to evaluate closely credibility determinations and assess whether they indeed are supported by the record. See, e.g., Li, 559 F.3d at 1102-07 (reversing an adverse credibility determination after examining the IJ’s bases one by one and concluding that they often involved mischaracteriza-tions of the record or translation difficulties and confusion on the part of the alien). Nor do they permit the court to affirm an adverse credibility finding, in pre-REAL ID cases such as this one,[2] unless the agency’s cited reasons are “substantial and bear a legitimate nexus to the finding.” Garrovillas v. INS, 156 F.3d 1010, 1013 (9th Cir.1998) (quotation marks omitted). That is, “[a] minor inconsistency or incidental misstatement that does not go to *949 the heart of an applicant’s claim” is an insufficient basis upon which to affirm an adverse credibility determination. Lei Li v. Holder, 629 F.3d 1154, 1158 (9th Cir.2011); see also Risk v. Holder, 629 F.3d 1083, 1088 (9th Cir.2011) (“[M]inor inconsistencies regarding non-material and trivial details, such as typographical errors or inconsistencies in specific dates and times that lack a close nexus to the petitioner’s asserted grounds of persecution, cannot form the exclusive basis for an adverse credibility determination.”).
B.
At argument in this case, the Government pressed only two bases as providing support for the IJ’s adverse credibility finding, neither of which satisfies this court’s standards. The Government first noted that, at the end of his testimony, Mr. Singh was asked to verify the identity and origin of certain record documents. At that time, he stated that a certain document was the affidavit of his mother and that he had received it by mail, sent by his father. No follow-up questions were asked and no further testimony on the issue was taken. In the opinion denying relief issued some months later, the IJ noted that Mr. Singh had presented a death certificate for his father that indicated he had died before the affidavit had been executed, so he could not have been responsible for the mailing.
The majority does not rely on this inconsistency, and I agree that to do so would be improper for two principal reasons. First, “an IJ cannot base an adverse credibility determination on a contradiction that the alien could reconcile if given a chance to do so. Accordingly, the IJ must give the petitioner the opportunity to provide an explanation of an apparent inconsistency.” Rizk, 629 F.3d at 1088. The record does not show that Mr. Singh was ever questioned about this inconsistency. Second, the identity of the person responsible for mailing an affidavit written years after Mr. Singh fled India, sent for litigation and principally for the purpose of establishing when he left India, cannot be said to “go to the heart of [Mr. Singh’s] claim,” Lei Li, 629 F.3d at 1158. “An inconsistency goes to the heart of a claim if it concerns events central to petitioner’s version of why he was persecuted and fled.” Singh v. Gonzales, 439 F.3d 1100, 1108 (9th Cir.2006). At oral argument, the Government told us that whether this discrepancy went to the heart of Mr. Singh’s claim was a “borderline” case. I do not view it so generously. Mr. Singh’s father’s death and his mother’s execution of an affidavit were completely unrelated to the events surrounding his claim of persecution; the issue of who mailed the affidavit, therefore, does not go to the heart of the claim.
The second basis asserted by the Government at oral argument in support of the IJ’s credibility determination was that Mr. Singh’s testimony was contradicted by the documentary evidence, specifically, the country reports. When pressed on this point, however, the Government admitted that the country reports were not so categorical as to demonstrate that any person alleging similar persecution cannot be credible; instead, the Government told us that the country reports simply did not lend any support to Mr. Singh’s claims. The notion that the documentary record does not enhance the petitioner’s claim is a far cry from the notion that it demonstrates his incredibility. As the majority notes, Maj. op. 946, cases from this court hold that an IJ is permitted to find an alien’s testimony “implausible in light of the background evidence.” Jibril v. Gonzales, 423 F.3d 1129, 1135 (9th Cir.2005) (emphasis omitted) (quotation marks omitted). However, this court also has explained that, “[w]hile an IJ may use a Department of State Report to discredit a generalized statement about a country, it *950 may not be used to discredit specific testimony regarding a petitioner’s experience.” Singh, 439 F.3d at 1110 (emphasis added) (referring to the State Department country report on Indian police treatment of the Khalistani movement). The gravamen of the Government’s concession to this court regarding the country reports at issue in this case is precisely the same.
In upholding the IJ’s credibility determination, the majority today relies on this latter basis, notwithstanding its flaws. In addition to the claimed inconsistency with the background evidence — one of only two bases the Government was prepared to stand upon at oral argument — the majority also relies on the IJ’s finding that Mr. Singh was “nonresponsive and evasive.” A.R. 75.[3] The IJ and the majority support this finding first by reference to the occasional requests of Mr. Singh, who was speaking through an interpreter, to have a particular question repeated. When the questions were repeated, he provided an answer in every circumstance. I am aware of no case that holds that merely asking for occasional repetition, particularly through an interpreter, is a sufficient basis to disbelieve an asylum applicant’s testimony.
Next, the IJ and the majority each invite our attention to a place in the transcript in which Mr. Singh is asked how many times he was beaten up during a particular arrest, and Mr. Singh appears confused. He asks whether the question refers to just the second arrest, or a total among all arrests. The exchange is interrupted by the IJ’s stopping testimony for a tape change. When, back on the record, his attorney directly tells him to “just answer about the second arrest,” Mr. Singh gives a clear and unequivocal answer that is consistent "with the remainder of his testimony. A.R. 184. Again, I see nothing in this exchange to support the conclusion that Mr. Singh was evasive or nonre-sponsive and therefore incredible.
Finally, the IJ and the majority reference a question by the Government’s attorney regarding “why Gurjit had been arrested in 1997.” Maj. op. 945. The Government asked Mr. Singh whether he had “ask[ed] Gurjit why the police arrested both he and you ... in August, 1997.” A.R. 203. When Mr. Singh responded in the affirmative, the Government asked what Gurjit had said in reply. Mr. Singh responded, “that the police were falsely accusing both of us.” A.R. 204. The Government pressed him further, asking, “Did he give you any reason, such as any recent activity on his part with the party or with the AI — the AISSF as to why the *951 police would choose August, 1997, to go after him?” Id. Mr. Singh asked for repetition. In asking again about what Gurjit had said, the Government stated, “Did Gurjit say that possibly some of his recent activities might have made the police come after him?” Id. Mr. Singh responded in the Government’s own term— it was “possible” — but made clear that he did not remember Gurjit saying anything to that effect. Id. He then returned to his original statement that he and Gurjit had been falsely accused of participating in the Khalistani movement. Respectfully, the record again does not demonstrate that Mr. Singh evaded a response to the Government’s questions. It shows only that the Government was not satisfied with Mr. Singh’s original answer and attempted to obtain a different one. Mr. Singh followed the extended question with difficulty that is obvious on the face of the record, but he maintained his original response throughout. The IJ’s finding that this portion of the testimony demonstrated that Mr. Singh was evasive or nonresponsive, accepted by the majority, is simply an unreasonable reading of the transcript.[4]
Of course, as the majority acknowledges, “even minor inconsistencies going to the heart of a petitioner’s claim may, when considered collectively, deprive [the] claim of the requisite ring of truth” and support an adverse credibility determination. Rizk, 629 F.3d at 1088 (alteration in original) (internal quotation marks omitted). When, however, the IJ relies on facts not supported by the evidentiary record and impermissible legal conclusions in identifying inconsistencies, there is little left to satisfy the collective analysis.
In sum, those bases for the adverse credibility determination relied upon by the majority have significant flaws, and they are insufficient to demonstrate that the IJ’s finding is supported by substantial evidence. When viewed in light of the IJ’s entire credibility analysis, complete with clear misstatements of the evidence of record, I cannot agree that the IJ’s finding is entitled to deference. This is not simply a case where there are two plausible readings of the record, and the IJ’s, although perhaps weaker, still finds the support of substantial evidence in the record. A review of the record in this case leaves me with the firm conviction that the IJ made numerous and serious errors of fact and law when arriving at the adverse credibility determination.
For that reason, I would grant the petition for review.

. See also Lopez-Reyes v. INS, 79 F.3d 908, 912 (9th Cir.1996) (reversing adverse credibility determination "based on an inaccurate reading of the record and on improper inferences”); Aguilera-Cota v. United States INS, 914 F.2d 1375, 1382 (9th Cir.1990) (reversing the IJ’s adverse credibility determination that had been based on the facts that "Aguilera's oral testimony included information not set forth in his asylum application” and that "Aguilera had no proof that the threatening note [forming the basis of his asylum claim] had been delivered”).

. Because Mr. Singh’s claim was filed prior to May 11, 2005, the REAL ID provisions circumscribing our review of credibility are not applicable. See Kaur v. Gonzales, 418 F.3d 1061, 1064 n. 1 (9th Cir.2005).

. The court justifies its decision to go beyond the Government's narrowing of the issues at oral argument with the statement that "our task is to review the agency's decision in its entirety and, in doing so, we are not limited to the reasons discussed at argument.” Maj. op. 945 n. 1. Of course, the mere fact that an issue is not discussed at oral argument does not mean it is not worthy of our attention. In this case, however, as I have noted, the Government opened its argument by explicitly narrowing the issues and acknowledging flaws in the agency's opinion.
The majority apparently believes that the Government’s concession of flaws in the agency opinion and its further statement that the agency decision should be upheld, nevertheless, because "there are two bases in the finding that enjoy support in the record,” Oral Argument (9th Cir. June 13, 2011), represent only that "reasonable minds could differ” on the question, Maj. op. 945 n. 1 (quotation marks omitted). Although we disagree on the import of the Government’s statements at oral argument, our disagreement is of little consequence. In my view, even in the court’s harder look at the portions of the agency opinion effectively abandoned by the Government at argument, it has failed to identify any reason supported in the record or in the law of this circuit to hold that the adverse credibility determination is supported by substantial evidence.

. Nor can Mr. Singh be faulted for failing to identify explicitly the motivations of his persecutors. See Ali v. Ashcroft, 394 F.3d 780, 785 (9th Cir.2005) ("We have repeatedly held that asylum applicants bear neither the unreasonable burden of establishing the exact motives of their persecutors nor the burden of showing that their persecutors were motivated solely ‘on account of' one of the protected grounds.” (first emphasis added)).